STATE OF MINNESOTA *ex rel.* Railroad & Warehouse Commission *vs.* CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.

### March 18, 1889.

**Railroad Commission—Interstate Commerce between Points in Same State.**—The railroad and warehouse commission of this state has no authority to prescribe rates for transportation by common carriers in another state. It cannot fix the rates for carriage between two points within this state, over a route extending across a neighboring state. Such power is vested exclusively in congress.

*Mandamus.*

*Moses E. Clapp,* Attorney General, for relator.

*James H. Howe,* for respondent.

DICKINSON, J. This is a proceeding by *mandamus,* to compel this respondent to comply with an order of the railroad and warehouse commission of this state, prescribing rates for the transportation of freight over the respondent's line of road from the city of Duluth to the city of Mankato, both of which are within this state. The only question now presented for decision is as to the jurisdiction of our railroad and warehouse commission to make this order, in view of the circumstances to which we now refer. The line of railroad operated by the respondent, and over which its business of transportation between the cities above named is carried on, is as follows: That part of the line within the city of Duluth, and which extends to the boundary line between Minnesota and Wisconsin, is owned by the Superior Short-Line Railway Company of Minnesota, a corporation of this state. Connecting with this at the boundary line, and extending into the village of Superior, in Wisconsin, is a road owned by the Superior Short-Line Railway Company, incorporated under the laws of the latter state. Connecting with this, at the village of Superior, commences the railroad of this respondent, which runs from thence to the city of Hudson, in Wisconsin, a distance of 148 miles. At that point it crosses the boundary line into Minnesota, and from that point, by way of St. Paul, the line runs within this state 105 miles to Mankato, and beyond. The two short-line railways above men-

tioned are operated by this respondent as a part of its line of road, and we attach no importance to the fact that they are owned by other ·corporations. So far as it concerns the question here involved, the entire line from Duluth to Mankato is to be deemed as under the control of this respondent, and as though the whole were a part of its own line of road.

By section 8, of article 1, of the constitution of the United States, congress is empowered "to regulate commerce with foreign nations and among the several states." The transportation of property by a common carrier, including the rates to be charged therefor, is embraced within the meaning of the word "commerce," as here used. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Case of State Freight Tax*, 15 Wall. 232; *Lord* v. *Steamship Co.*, 102 U. S. 541; *Wabash, etc., Ry. Co.* v. *Illinois*, 118 U. S. 557, (7 Sup. Ct. Rep. 4;) *Philadelphia Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, (7 Sup. Ct. Rep. 1118;) *Fargo* v. *Michigan*, 121 U. S. 230, (7 Sup. Ct. Rep. 857;) *Carton* v. *Illinois Central R. Co.*, 59 Iowa, 148, (13 N. W. Rep. 67.) Since the decision in *Wabash, etc., Ry. Co.* v. *Illinois*, 118 U. S. 557, (7 Sup. Ct. Rep. 4,) it must be regarded as settled, whatever doubts may have been previously entertained, that the regulation, as by prescribing rates, of such transportation as is to be deemed interstate as distinguished from wholly domestic carriage is exclusively given to congress. The only question upon which there can be any doubt is whether the transportation to which this order of the commission relates is to be deemed commerce or transportation between ·different states, within the meaning of the constitutional provision above quoted, or as being in its nature merely domestic commerce or transportation, to be governed wholly by our state laws, and over which congress has no control. The order prescribing rates, and to enforce the observance of which is the object of this proceeding, applies to the entire route from Duluth to Mankato, a large part of which—indeed, the greater part of which—lies beyond the boundaries of our state, and within the territory of another sovereignty. These rates are for the continuous carriage of freight over the entire route, including the transit of 148 miles through the state of Wisconsin. The order is·as applicable to that part of the line as to that which is

within our own state, and can only be sustained upon the theory that the railroad and warehouse commission of the state of Minnesota has authority to determine what charges may be made for the transportation of freight by a common carrier through the state of Wisconsin, provided only that the carrier receives the property within this state, and is to carry it through the foreign, state to a destination within our own borders.

In view of the above decisions of the supreme court of the United States, that the *transportation* of freight by a common carrier, apart from considerations of contract concerning the property as between the shipper and the consignee, is a subject of "commerce," to which the constitution applies, it is not a matter of controlling importance that the consignor and consignee, or place of shipment and destination, be within the same state, if the transportation is through a foreign state. Assuming that the constitution places within the exclusive control of congress the subject of transportation among the several states, let us suppose that a shipment is made from Duluth to Winona—both cities being within our state, but upon the borders of Wisconsin—by a route wholly within the latter state, excepting the inconsiderable distance of the depot grounds in those cities from the state line. Can it be said that this carriage of perhaps 200 miles through the state of Wisconsin, and of a mile or two within our own borders, is *domestic* transportation and commerce, as distinguished from that which, under the constitution, is to be deemed as being "among the several states?" The constitution, as interpreted by the court whose decisions upon this subject are final, has placed under the exclusive regulation of congress the subject of transportation among the states, so far, among other things, as relates to the matter of charges, in order that it may be protected from conflicting and adversely discriminating state legislation. *See authorities above cited.* Is not a case such as we have supposed, or the case now before us, transportation among the states, within this purpose of the constitution, as really as would be a shipment and transportation of goods from New York, Chicago, or Milwaukee to Minnesota, as to which unquestionably, under the decisions above cited, congress, and not the several states, would have the power to regulate? We are

unable to state any principle which supports the relator's claim of jurisdiction to determine what charges may be made for the transportation of freight through the state of Wisconsin. Whether the result would have been different if the order had prescribed rates only with respect to so much of the route as is within our own state we do not decide. The mere fact that Duluth and Mankato are both in this state, and that a part of the line of road of this respondent is also here, and operated under our law, cannot authorize our state authorities to regulate the operations of the 148 miles of road which is wholly within the state of Wisconsin, and which there exists and is managed, of course, under the laws of that state, subject to such limitations as the national constitution may impose. The order in question applies to *all* freight transported over this route from Duluth to Mankato. But it appears that in the usual course of business the respondent receives freight at the docks in Duluth destined for the several points on its road, both in Wisconsin and in this state, which had been received there from vessels navigating the great lakes, and which, as is to be inferred, must be classed as interstate commerce in any meaning of that term. Of course, as to such transportation our commission has not authority to prescribe rates under the decisions above cited.

There might perhaps be distinguished from this case the case of a Minnesota carrier engaged only in carrying between points within this state, but whose route incidentally at some point, and for an inconsiderable distance, should cross the line of the state. Whether or not the transportation in such a case might be deemed to be substantially domestic, and not embracing an important element of foreign transit, we do not decide. This is not such a case. This line within Wisconsin, to which this order is applicable, was operated not merely for transportation between points in Minnesota, but was doing the ordinary business of a common carrier within the state of Wisconsin.

The question under consideration has not come before the supreme court of the United States in the form here presented; but it seems to us that that court has so determined the construction and effect of the commerce clause in the constitution that, following its decisions

as we are bound to do in such cases, the result already indicated cannot be avoided. We need not again refer to the many decisions, some of which have been cited, which leave no doubt that transportation is commerce within the meaning of the constitution, and that the authority of congress is exclusive as respects the regulation of rates for interstate commerce.

In *Lord* v. *Steamship Co.*, 102 U. S. 541, the question presented for decision was whether congress had the power to regulate the liability (to the owners of goods lost in the course of transportation) of the owners of vessels engaged only in transportation between different ports in the same state, (California,) the voyage between such ports being in part upon the high seas, and out of the limits of the state. The court recognized the fact that congress had no power to thus interfere with the exclusively internal commerce of a state, and that the law of congress (restricting the common-law liability of carriers) could be sustained in its application to this case only in case the transportation in question should be deemed to be within the clause of the constitution empowering congress "to regulate commerce with foreign nations and among the several states." It was decided that such transportation was included in "commerce with foreign nations," a matter of "external concern," as respected the state of California, and subject to the regulating power of congress. If such transportation from San Francisco to San Diego, in the same state, was "foreign" commerce (transportation) within the meaning of the constitution, because the voyage was for the most part upon the high seas, the common highway of nations, is not the transportation from Duluth to Mankato, by a route which for the most part is wholly within the territory of Wisconsin, commerce (transportation) "among the several states?" Has not the state of Wisconsin at least as much interest and as large a jurisdiction concerning the transit of goods by carrier across its territory as have the nations of the world, including our own, in the voyage merely from port to port in the state of California? How can the one be deemed foreign and the other exclusively internal, as respects the state of Minnesota? We are unable to make any distinction, and it seems to us that our decision must be controlled by that above cited. *Pacific Coast Steamship Co.* v. *Board*

*of R. R. Com'rs,* 9 Sawy. 253, (18 Fed. Rep. 10,) was like that last cited, except that the question related to the power of the state authorities of California to regulate rates of transportation upon steamvessels between various ports in that state. That authority was denied for the reason that it was not domestic commerce, the vessels in the course of the voyage going out to sea more than a league from land. Field, J., wrote the opinion of the circuit court.

A case closely analogous to that under consideration was very recently decided by the supreme court of South Carolina, in *Sternberger* v. *Cape Fear, etc., R. Co.,* 7 S. E. Rep. 836. The defendant was charged with violating the statute of that state which forbids a higher charge for a shorter than for a longer carriage. The property had been shipped from Charleston to Tatum,—both places being within that state. The course of transit from Charleston was, first, over two railroads wholly within the state; then to a point in North Carolina over a road operated in both states; then for some distance within North Carolina, over a road wholly within that state; then it was received in North Carolina by the defendant road, which was operated in both states, and transported to its destination at Tatum. The charge exacted for the entire distance was $4.40, while the freight to a point six miles further would have been only $4. It was held that the railroad commission of South Carolina had no jurisdiction to fix rates for such transportation; nor does the decision seem to rest entirely upon the fact that one of the roads in this route was wholly in North Carolina. That fact, as we think, should not have affected the result.

The interstate commerce commission has recently (November, 1888) ruled upon the question here presented, holding that commerce between points in the same state, but which, in being carried from one place to the other, passes through another state, is interstate commerce, subject to congressional regulation. *New Orleans Cotton Exchange* v. *Cincinnati, N. O. & Tex. Pac. Ry. Co.,* 2 Interst. Comm. R. 375. We are aware that the supreme court of Pennsylvania has held to the contrary. *Com.* v. *N. Y., etc., R. Co.,* 2 Interst. Comm. Rep. (Co-op. Ed.) 227; *Com.* v. *Lehigh Valley R. Co.,* Id. 226; 17 Atl. Rep. 179. If those cases were wholly analogous to that before us,

that court has not regarded the decision of the court of last resort in such cases, in *Lord* v. *Steamship Co., supra,* as having the effect which we think must be accorded to it.

Our conclusion is that the commission had no jurisdiction to prescribe rates for transportation through the state of Wisconsin, and the writ must be quashed.

Ordered accordingly.