JAMES A. REED *et ux.,* Respondents, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

Kansas City Court of Appeals, January 29, 1894.

1. **Telegraphs:** COMMON CARRIERS: INTERSTATE COMMERCE. Telegraph companies occupy the same relation to commerce as carriers of messages that a railroad company does as a carrier of goods; both are instruments of commerce and their business is commerce itself, and intercourse by telegraph message between states is inter-state commerce.

.2. Jurisdiction: INTERSTATE TELEGRAPHS: STATE REGULATION OF. ·
Whether the Iowa statute prohibiting telegraph companies from con-
tracting against their own negligence, so far as is applicable to inter-
state messages, is in conflict with the constitution of the United States;
and federal legislation on the same subject is a question of which
the courts of appeals of this state have no jurisdiction.

*Appeal from the Jackson Circuit Court.*—HON. JOHN W.
HENRY, Judge.

·TRANSFERRED TO SUPREME COURT.

*Karnes, Holmes & Krauthoff* for appellant.

(1) The court erred in admitting in evidence the
·statute of the state of Iowa, and Mr. Stiles' oral testi-
mony as to the unwritten law of that state relative to
the liability of telegraph companies; and also erred in
giving the third, fourth and fifth instructions on behalf
·of the plaintiffs. The telegram in question was sent
from Cedar Rapids, Iowa, to Kansas City, Missouri.
It was, therefore, an interstate transaction, and not
.subject to the laws of the state of Iowa. *Stanley v.
Railroad,* 100 Mo, 435, 438; *Railway v. Sherwood,* 19
.S. W. Rep. 455; 84 Tex. 125; *Otis v. Railroad,* 20
S. W. Rep. 676, 677; 112 Mo. (1892), 622; *Tel. Co.
v. Pendleton,* 122 U. S. 347. (2) It follows that the
validity of the conditions under which the message in
·controversy was sent, must be determined by the rule
·or decision announced by the supreme court of Mis-
.souri: namely, that the provision limiting liability for
errors and mistakes in unrepeated messages is valid.
*Wann v. Tel. Co.,* 37 Mo. 472, and cases cited; 2
Shearm. & Redf. on Neg., section 553, p. 405; *Kiley v.
Tel. Co.,* 109 N. Y. 231, 236; *Tel. Co. v. Stevenson,* 128
_Pa. St. 442, 455; *Thompson v. Tel. Co.,* 64 Wis. 531.

*Kagy & Bremermann* for respondents.

SMITH, P. J.—This is an action brought by the plaintiffs against the defendant to recover damages on account of the alleged negligence of defendant in transmitting a message from Cedar Rapids, in the state of Iowa, to Kansas City, in the state of Missouri.

The plaintiffs, residents of Kansas City, were the owners of certain real property in Cedar Rapids which they desired to sell. They employed one Hedges, a real estate agent, at the latter place to solicit and submit to them, for their approval or rejection, offers of purchase for the various lots and parcels of said real estate of which they had furnished a list.

On May 25, 1889, Hedges received from one Scott an offer of $1,300 for one of the plaintiff's lots, and thereupon he telegraphed to them at Kansas City the offer adding that he could not get more. The message was received the same day by plaintiffs but read $1,900 instead of $1,300. Plaintiff then telegraphed back to Hedges "to sell property for amount offered, will send deed by Monday, 27th." On receipt of this message, Hedges entered into a written contract with Scott for the sale of the lot and received from him ten dollars on payment of the purchase price. Two days afterwards Hedges received from plaintiffs a deed expressing the consideration of $1,900 with the name of the grantee left blank; Hedges testified that, noticing this, he thought that there might possibly be some mistake about it, so he wrote the plaintiffs with reference to it. Without waiting a reply from plaintiffs he delivered the deed to Scott, filling in his name as grantee in the blank and received the purchase money. Plaintiffs, replying to Hedges' letter of inquiry, expressed their surprise and reminded him that the telegram stated the consid—

eration to be $1,900 and that they were not willing to accept $1,300, and requested him not to close the deal and not to deliver the deed, etc. This letter as already stated was not received until some four days after Hedges had "closed the deal" with Scott.

At the trial the plaintiffs to maintain the issue in their behalf introduced in evidence, over the objections of the defendant, several sections of the statute of Iowa, among which was section 1329, which provides that, "the proprietor of a telegraph is liable for all mistakes in transmitting messages made by any person in his employment and for all damages resulting from a failure to perform any of the duties required by law."

Plaintiffs, against defendant's objection, also introduced the testimony of a practicing lawyer of the state of Iowa who was familiar with the unwritten law of that state in relation to the liability of telegraph companies. This witness testified that the supreme court of Iowa, in *Sweatland v. Telegraph Co.* and *Manville v. Telegraph Co.*, reported respectively in the 27 and 37 Iowa reports, had placed the construction upon the statutory provision just quoted that a telegraph company could not contract against its liability for negligence.

The message as received by plaintiffs from Hedges was on a form containing the following heading:

"THE WESTERN UNION TELEGRAPH COMPANY.

"This company *transmits* and *delivers* messages only on conditions limiting its liability, which have been assented to by the sender of the following message.

"Errors can be guarded against only by repeating a message back to the sending station for comparison, and the company will not hold itself liable for errors or delays in transmission or delivery of *unrepeated*

*messages*, beyond the amount of tolls paid thereon, nor in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission.

"This is an *unrepeated message*, and is delivered by request of the sender, under the conditions named above.

"THOS. T. ECKERT,            NORVIN GREEN,
    "General Manager.            President."

It is not stated in the petition whether the message was repeated or not. The answer alleges that it was not, and pleads in avoidance the conditions of the message limiting its liability as just set forth.

There was adduced by the plaintiffs, evidence tending to show that the plaintiffs, after the delivery and receipt of the message by them, requested that it be repeated, and that the defendant's operator in charge reported that he had done so and that it had been correctly transmitted in the first instance. It does not, however, appear that the message was repeated.

The court overruled a demurrer to the evidence and subsequently by a number of instructions told the jury: *First*, that under the evidence the contract to transmit the message was made in Iowa and its performance entered upon there and is governed by the laws of that state, and that by the laws of Iowa in force at that time the printed conditions attached to said message are void and contrary to public policy in so far as they seek to relieve said company from liability in consequence of its negligence; and, *second*, that the contract between the said Hedges and defendant was executed in the state of Iowa and by the laws of that state said conditions in said contract exempting defendant from the negligence of its servants for mistakes or delays in the transmission or delivery of

unrepeated messages is null and void and of no effect and constitutes no defense to the action."

The plaintiffs had judgment and the defendant has appealed.

At the very threshold of this case we are confronted with a jurisdictional question which we are obliged to decide. It is in effect suggested that this is a case involving the construction of section 8, article 1, of the constitution of the United States and the act of congress of February 4, 1887, entitled "an act to regulate commerce." It is the contention of the defendant, as we understand it, that the Iowa statute is in conflict with the clause of the constitution already referred to, vesting in congress the power to regulate commerce among the states.

A telegraph company occupies the same relation to commerce as a carrier of messages that a railroad company does as a carrier of goods. Both companies are instruments of commerce and their business is commerce itself. Intercourse by telegraphic messages between the states is interstate commerce. Telegraph companies are carriers of ideas, wishes, orders and intelligence. *Telegraph Co. v. Texas*, 105 U. S. 460; *Pensacola Telegraph Co. v. W. U. Telegraph Co.* 96 U. S. 1; *W. U. Telegraph Co. v. Pendleton*, 122 U. S. 347.

According to the rulings made by the supreme court of the United States in the above cited cases, congress has supreme authority over the subject of commerce by the telegraph among the states, when it chooses to exert its power, and that the states can impose no impediment to the fredom of that commerce. It was held in the first of these cases that a statute of the state of Texas, so far as it operated on messages sent out of the state, was a regulation of foreign and interstate commerce and therefore beyond

the power of the state. And in the last one of them it was declared that whatever authority the state may possess over the transmission and delivery of messages by telegraph companies within her limits, it does not extend to the delivery of messages in other states.

And since the defendant has accepted the provisions of the act of congress of July 24, 1866, "to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military and other purposes" (122 U. S. *supra*), it seems to us that the question fairly arises on the record whether or not the Iowa statute, in so far as it renders nugatory the condition in the contract between the plaintiffs, the senders of an unrepeated message, and the defendant telegraph company, exempting the latter from damages for errors and delays of transmission of such message from that state into another state, constitute an interference with interstate commerce, or whether this statute, since the enactment by congress of the several acts referred to, when invoked in a case of this kind, is violative of the said clause in section 8, article 1, of the constitution of the United States; and whether or not if the state of Iowa once had authority to regulate this species of interstate commerce by statute, has that authority not been superseded by the said act of February 4, 1887.

A number of questions are presented which we think involve the construction of the said provisions of the constitution of the United States and the statutes enacted in pursuance thereof, which, under the constitution of this state, are without our jurisdiction.

It therefore only remains for us to certify the case to the supreme court of this state, where resides the requisite jurisdiction to determine these questions. It is accordingly so ordered. All concur.