(May 17, 1913.)

## CRESCENT BREWING COMPANY, a Corporation, Appellant, v. THE OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Respondent.

[132 Pac. 975.]

INTERSTATE COMMERCE—CONNECTING LINES—POINTS WITHIN STATES— SHIPPING OVER ROUTE PARTLY OUTSIDE OF STATE.

1. Sec. 1 of the Interstate Commerce Act, as amended June 29, 1906, and April 13, 1908, provides, among other things: "That the provisions of this act shall apply to . . . . any common carrier or carriers engaged in the transportation of passengers or property wholly by railroad (or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment), from one state or territory of the United States, or the District of Columbia, to any other state or territory of the United States, or the District of Columbia, or from one place in a territory to another place in the same territory. . . . . Provided, however, That the provisions of this act shall not apply to the transportation of passengers or property or to the receiving, delivering, storage, or handling of

property wholly within one state and not shipped to or from a foreign country, from or to any state or territory as aforesaid." And that "the term 'railroad,' as used in this act, shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any corporation operating a railroad, whether owned or operated under a contract, agreement or lease, and shall include all switches, spurs, tracks, and terminal facilities of every kind used or necessary in the transportation of persons or property designated herein, and also all freight depots, yards, and grounds used or necessary in the transportation or delivery of any of said property; and the term 'transportation' shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage."

2. Sec. 6 of the Interstate Commerce Act, as amended, requires every common carrier, subject to the provisions of the act, to file with the commission and print and keep open to public inspection schedules showing all the rates, fares and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroad, pipe-line or by water, when a through route and joint rate have been established.

3. *Held,* in this case, that the evidence clearly shows that the proposed transportation of the goods offered for shipment was from Nampa in the state of Idaho to Weiser, Idaho, passing from Idaho into Oregon and through a portion of Oregon and back into Idaho, and from Weiser, Idaho, to New Meadows, Adams county, Idaho, the terminus of the connecting line with the defendant company, and that such facts show the proposed shipment was an interstate shipment under the interstate commerce act.

4. *Held,* that the shipment involved in this case being an interstate shipment, the defendant is not bound beyond the legal destination under the interstate commerce act, which in this case is New Meadows.

5. *Held,* that New Meadows, the legal destination of the shipment involved, is located in Adams county, and that Adams county is a dry county under the local option act, Laws of 1909, p. 17, and that under sec. 25 of such act it is provided that any person, firm, corporation, society or club within this state who shall accept for shipment, transportation or delivery, or who shall ship, transport, or deliver any intoxicating liquor to any person, firm, corporation, society or club in any prohibition district in the state of Idaho, or to any point or place in this state where the sale of intoxicating liquors is prohibited by law, except as may be authorized by this act or the interstate commerce law of the United States,

shall be guilty of a misdemeanor and punished as provided in sec. 30 of this act.

6. A mandate will not be issued by this court against a party and thereby compel the commission of a crime.

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon, Ed. L. Bryan, Judge.

Action for a writ of mandate compelling the defendant company to accept beer for shipment into a ''wet'' county of this state. *Affirmed.*

Chas. M. Kahn, for Appellant.

Stage lines and freight lines carrying goods from place to place have been classified by text-writers as common carriers. (Moore on Carriers, sec. 23, p. 55, sec. 28, p. 63; Hutchinson on Carriers, sec. 68, p. 63, sec. 70, p. 66.)

Going from Idaho into Oregon and passing back again into Idaho makes a shipment from Nampa to Weiser interstate commerce. (Hutchinson on Carriers, sec. 525, p. 610; Judson on Interstate Commerce, sec. 7, p. 14; Barnes on Interstate Transportation, sec. 28E; *Hanley v. Kansas City Southern Ry. Co.,* 187 U. S. 617, 23 Sup. Ct. 214, 47 L. ed. 333; *Leibengood v. Missouri, Kansas & Texas Ry. Co.,* 83 Kan. 25, 109 Pac. 988, 28 L. R. A., N. S., 985.)

The right of different states to pass laws relating to the transportation of liquors, when the shipment is interstate in its character, has been passed upon a number of times by the supreme court of the United States, and in each case the court has held that such laws could not affect interstate commerce, and where they did so, they were invalid as being in contravention of the commerce clause of the federal constitution. (*Leisy v. Hardin,* 135 U. S. 100, 10 Sup. Ct. 681, 34 L. ed. 128; *Vance v. Vandercook Co.,* 170 U. S. 438, 18 Sup. Ct. 645, 42 L. ed. 1100; *Rhodes v. Iowa,* 170 U. S. 412, 18 Sup. Ct. 664, 42 L. ed. 1088; *Louisville & Nashville R. Co. v. Cook Brewing Co.,* 223 U. S. 70, 32 Sup. Ct. 189, 56 L. ed. 355; *Gastineau v. State,* 7 Okl. Cr. 512, 124 Pac. 464.)

P. L. Williams, Richards & Haga and D. Worth Clark, for Respondent.

It is the subject of considerable doubt as to whether or not a shipment is an interstate shipment merely because between the point where the shipment originated and the point of its destination, both being in the same state, it passes through a small portion of another state, but assuming for the purpose of argument that such a shipment is an interstate shipment, there is no obligation resting upon the defendant company to accept such shipment for transportation over any line of any connecting carrier, unless it be such a carrier as comes within the definition of a common carrier as given in the Interstate Commerce Act. The rule in this respect is laid down in vol. 4, Elliott on Railroads, sec. 1432, 2d ed.

STEWART, J.—This action was brought in the district court of Canyon county for a peremptory writ of mandate compelling the defendant company to accept from plaintiff certain freight at the town of Nampa.

The complaint alleges that Nampa is a station upon the railroad line of the respondent, and that plaintiff tendered for shipment ten quarter barrels of beer addressed to A. T. Toney, McCall, Boise county, Idaho, by way of New Meadows, care of Mitchell & Mathias Forwarding Company; that at the time plaintiff tendered a bill of lading made out in the regular form, setting out the class of goods and weight, the address of the consignee and the route. This tender and offer of shipment was refused by the defendant, and the defendant indorsed on the bill of lading, by the agent of the defendant company at Nampa, the following:

"This shipment refused. G. F. A. J. A. Reeves. Rules unlawful to accept where railroad destination is located in prohibition territory.

"(Signed)   J. M. McPHERSON.

"Nampa, Idaho, Apr. 18, 1912."

The allegations of the complaint were put in issue, and it is also alleged that Nampa, Idaho, is situated in prohibition

territory, as defined by the statutes of Idaho; that New Meadows, the town mentioned in plaintiff's complaint, is situated in Adams county, Idaho, which had prior to the commencement of this action, and for a long time prior thereto, voted to prohibit the sale of intoxicating liquors in Adams county, Idaho, and that the sale of intoxicating liquors in Adams county is now prohibited by law; that the defendant has never held itself out as a common carrier of freight or accepted shipments of freight for delivery to McCall, Boise county, Idaho, but shipments offered to this defendant, the ultimate destination of which is McCall, Boise county, Idaho, are billed to New Meadows, Adams county, Idaho, where delivery is made to the consignee, or his agent there, where the liability and responsibility of the defendant ceases; and for that reason the defendant cannot legally accept for shipment and delivery the intoxicating liquors offered to it by the plaintiff.

It is also alleged in the answer that this defendant has no through freight rate, and does not quote any freight rate from Nampa, Canyon county, Idaho, to McCall, Boise county, Idaho, and that there is now on file with the interstate commerce commission no tariff showing any rate from Nampa, Canyon county, Idaho, to McCall, Boise county, Idaho, and there is no common carrier of freight for hire over whose line this defendant can bill or transport freight from Nampa, Canyon county, Idaho, to McCall, Boise county, Idaho, and that the defendant has no connection whatever with the Mitchell & Mathias Forwarding Company mentioned in plaintiff's complaint, and said Mitchell & Mathias Forwarding Company does not hold itself out as a common carrier of freight and has not filed any tariff with the interstate commerce commission, and has no arrangement with the defendant company or with the Pacific & Idaho Northern Railroad whereby freight is billed over its stage line from New Meadows to McCall, or to any other place.

Upon the issues made by the complaint and answer the cause was tried to the court and findings of fact and conclusions of law were filed and judgment was entered that a writ

of mandate be denied and the cause dismissed.   This appeal is from the judgment.

The appellant depends for reversal upon the following grounds: First, that the shipment offered by plaintiff to the defendant was a continuous shipment from Nampa to McCall, Idaho, and that the point of destination was McCall and not New Meadows; that the Oregon Short Line Railway, the Pacific & Idaho Northern Railroad and the Mitchell & Mathias Forwarding Company are all connecting carriers; that the delivery of freight to the Mitchell & Mathias Forwarding Company is not a delivery to the agent of the consignee, but a delivery of the goods to a connecting carrier of the defendant. Second, that the shipment in question is an interstate shipment, and being interstate commerce, under the commerce clause of the United States constitution, the local option law of the state of Idaho did not apply. Third, refusal of the lower court to issue the peremptory writ of mandate. Fourth, that the findings and judgment are contrary to the evidence and contrary to the law.

The respondent contends that there is no obligation resting upon the defendant company to accept such shipment for transportation over any line of any connecting carrier, unless it be such carrier as comes within the definition of a common carrier as given in the interstate commerce act.

From the positions taken by the respective parties, it is apparent that two questions are presented for consideration. First, whether the shipment in question was an interstate shipment and governed by the Interstate Commerce Act as amended June 29, 1906, and April 13, 1908; second, whether sec. 25 of the local option law, Laws of 1909, p. 17, prohibits the shipment involved in this case, and would the acceptance of such shipment subject the defendant to the penalty prescribed by sec. 30 of said act.

We will first consider whether the shipment involved was an interstate shipment.

Sec. 1 of the Interstate Commerce Act reads as follows:

"That the provisions of this act shall apply to any corporation or any person or persons engaged in the transportation

of oil or other commodity, except water and except natural or artificial gas, by means of pipe-lines, or partly by pipe-lines and partly by railroad, or partly by pipe-lines and partly by water, who shall be considered and held to be common carriers within the meaning and purpose of this act, and to any common carrier or carriers engaged in the transportation of passengers or property wholly by railroad (or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment), from one state or territory of the United States, or the District of Columbia, to any other state or territory of the United States, or the District of Columbia, or from one place in a territory to another place in the same territory, or from any place in the United States to an adjacent foreign country, or from any place in the United States through a foreign country to any other place in the United States, and also to the transportation in like manner of property shipped from any place in the United States to a foreign country and carried from such place to a port of transshipment, or shipped from a foreign country to any place in the United States and carried to such place from a port of entry either in the United States or an adjacent foreign country: *Provided, however,* That the provisions of this act shall not apply to the transportation of passengers or property or to the receiving, delivering, storage, or handling of property wholly within one state and not shipped to or from a foreign county from or to any state or territory as aforesaid.

"The term 'common carrier' as used in this act shall include express companies and sleeping-car companies. The term 'railroad,' as used in this act, shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any corporation operating a railroad, whether owned or operated under a contract, agreement, or lease, and shall also include all switches, spurs, tracks, and terminal facilities of every kind used or necessary in the transportation of the persons or property designated herein, and also all freight depots, yards, and grounds used or necessary

in the transportation or delivery of any of said property; and the term 'transportation' shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof and all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported; and it shall be the duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor, and to establish through routes and just and reasonable rates applicable thereto. . . . ''

Sec. 6 of the same act, as amended, requires every common carrier, subject to the provisions of the act, to file with the commission and print and keep open to public inspection schedules showing all the rates, fares and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroad, pipe-line or by water when a through route and joint rate have been established, and this is followed by other provisions, including a provision that this section (sec. 6) shall apply "to all traffic, transportation, and facilities defined in this act."

These two sections of the commerce act are clear, definite and specific, and sec. 6 requires that in order to connect a railroad or stage line, or any other means of transportation of persons or freight, such connecting line or stage line or other means of transportation of persons or freight, is required to file a tariff with the interstate commerce commission, and make a contract or arrangement with the connecting line or lines whereby freight is billed over such stage line or other means of transportation of persons or freight.

From the allegations of the pleadings and the uncontradicted evidence, it clearly appears that the Mitchell & Mathias Forwarding Company, operating between New Meadows, Idaho, and McCall, Idaho, in the transportation of freight and other kinds of transportation, had in no way complied with the act of Congress regulating and governing interstate commerce,

heretofore referred to in this opinion. On the contrary, the evidence shows that such stage line was not a connecting carrier within the meaning of the Interstate Commerce Act, and in no way filed or offered to file its tariff with the interstate commerce commission, and made no effort to bring itself within the provisions of the Interstate Commerce Act. Under said act the defendant, the Oregon Short Line Railroad Company, could not be compelled by writ of mandate to make such stage line a connecting line and accept goods for delivery through the Mitchell & Mathias Forwarding Company at the destination of McCall. The defendant had a right to deny and refuse a shipment which extended beyond the town of New Meadows, the terminus of the connecting lines under the Interstate Commerce Act.

In the case of *Hanley v. Kansas City S. R. Co.*, 187 U. S. 617, 23 Sup. Ct. 214, 47 L. ed. 333, the supreme court of the United States very fully discusses the question as to what shipments are subject to the Interstate Commerce Act, and based the decision upon the decision of the supreme court of the United States in the leading case, *Pacific Coast S. S. Co. v. Railroad Commissioners*, 9 Saw. 253, 18 Fed. 10, wherein Justice Field announced a rule which is fully approved in the Hanley case, and is now recognized as the correct rule upon the subject of shipments, as provided by the Interstate Commerce Act. Justice Field says: "To bring the transportation within the control of the state, as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the state."

The evidence clearly shows that the proposed transportation of the goods offered for shipment was from Nampa, in the state of Idaho, to Weiser, Idaho, passing from Idaho into Oregon and through a portion of Oregon and back into Idaho, and from Weiser, Idaho, to New Meadows in Adams county, Idaho, the terminus of the connecting line with the defendant company. The facts show that the proposed shipment was an interstate shipment under the Interstate Commerce Act. (*Hanley v. Kansas City S. R. Co.*, 187 U. S. 617, 23 Sup. Ct. 214, 47 L. ed. 333; *Leibengood v. Missouri K. & T. R. Co.*, 83

Kan. 25, 109 Pac. 988, 28 L. R. A. 985, notes; 2 Hutchinson, Carriers, 2d ed., p. 610.) The shipment involved in this case being an interstate shipment, the defendant is not bound beyond the legal destination under the interstate commerce law, which in this case is New Meadows.

It is further shown in this case that New Meadows, the legal destination of the shipment, is located in Adams county, Idaho, and that Adams county is a dry county under the local option act, Laws of 1909, p. 17. Sec. 25 of such local option law is as follows:

"Any person, firm, corporation, society or club within this state who shall accept for shipment, transportation or delivery, or who shall ship, transport or deliver any intoxicating liquors to any person, firm, corporation, society or club in any prohibition district in the state of Idaho, or to any point or place in this state where the sale of intoxicating liquors is prohibited by law, except as may be authorized by this act or the interstate commerce law of the United States, shall be guilty of a misdemeanor and punished as provided in section 30 of this act."

Under this section it will be seen that if the respondent company had received the shipment with the destination New Meadows, it would have violated the foregoing section of the local option law, and would have been subject to the penalty fixed by that law, and for that reason the writ of mandate would have to be denied. Mandate will not be issued by this court against a party and thereby compel the commission of a crime.

The judgment is *affirmed*. Costs awarded to respondent.

Ailshie, C. J., and Sullivan, J., concur.

Petition for rehearing denied.