# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## WESTERN UNION TELEGRAPH COMPANY V. L. J. BOLLING.

### January 11, 1917.

1. TELEGRAPHS AND TELEPHONES—*Interstate Commerce.*—The transmission of intelligence by wire is commerce, either State or interstate.

2. TELEGRAPHS AND TELEPHONES—*Interstate Commerce.*—Telegraph and telephone companies are common carriers under the express provisions of the act of Congress to regulate commerce. The transmission of telegraphic messages between points within the State, which, in the course of their transmission, pass without the State into another State, or the District of Columbia, is interstate commerce.

3. TELEGRAPHS AND TELEPHONES—*Statutory Penalty—Negligence Within the Sate.*—While formerly it was held that though the message be interstate commerce, under certain conditions, in clear cases of negligence occurring within this State, the statutory penalty (Code, 1904, section 1294-h, clauses 5, 6) might be enforced, since the amendment of the act to regulate commerce of June 18, 1910, Congress having occupied the field of regulation with respect to interstate telegrams, the statute can no longer be invoked in such cases.

4. TELEGRAPHS AND TELEPHONES—*Limitation of Liability.*—Common carriers may limit their liability in interstate commerce by regulations contained in their published tariffs filed with and approved by the Interstate Commerce Commission, and such regulations supersede State statutes and policies and furnish the exclusive rules for determining the carriers' liability. So where telegraph companies undertake to limit their liability by the conditions under which they accept and transmit interstate telegrams, these conditions, until disapproved by the Interstate Commerce Commission, furnish the exclusive rules for determining their liability, subject to the federal statutes and general law, any State statute to the contrary notwithstanding.

Error to a judgment of the Corporation Court of the city of Newport News in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Hughes, Little & Seawell,* for the plaintiff in error.

*J. Winston Read,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

This is an action for the recovery of the statutory penalty (Code, 1904, sec. 1294-h, cl. 5, 6) and damages for an error in the transmission, which caused delay in the delivery, of a telegram sent on August 4, 1915, from L. J. Bolling, at Newport News, Va., to C. W. Bloxom, at Nassawadox, Va., reading as follows:

"Meet me at Cape Charles instead of Cheriton about nine morning."

Nassawadox is a small place upon the line of New York, Philadelphia and Norfolk Railroad, in Northampton county, on the Eastern Shore of Virginia. Because of the fact that the Chesapeake Bay lies between the Eastern Shore and the rest of the State, the only existing method of transmitting a message from Newport News to Nassawadox is by relaying it through the States of Maryland and Pennsylvania, and then down the Maryland and Virginia peninsula. There is no telegraph office at Nassawadox, so that under the custom of the company it was sent to Exmore, from which point it was telephoned to Nassawadox.

The mistake made was in changing the name of the addressee from C. W. Bloxom to W. N. Bloxom. The relayed messages show that the initials were correct at Newport News and Richmond, but show a change in the Washington relay to Philadelphia.

The message was sent subject to the usual conditions undertaking to limit the liability of the company printed on the telegraph blank.

The jury found a verdict for $100 only, and added nothing for additional damages.

Error is alleged in the failure of the court to give an instruction based upon the claim that this was an interstate message, and that Congress having legislated with reference to telegraph companies while engaged in interstate business, the penalty for dereliction of duty imposed by the State statute cannot be enforced as to such a message. The court was also asked to grant an instruction, to the effect that if the service in the State was without fault, the court was without jurisdiction to impose the penalty for a default occurring without the State and in the city of Washington, D. C.

These facts and the alleged errors naturally direct our minds to the consideration of three questions, each of which seems to be concluded by the authorities.

1. That transmission of intelligence by wire is commerce, either State or interstate, is definitely settled and no longer questioned. *Telegraph Co.* v. *Texas,* 105 U. S. 464, 26 L. Ed. 1067; *Western Union Telegraph Co.* v. *Pendleton,* 122 U. S. 347, 7 Sup. Ct. 1126, 30 L. Ed. 1187; *W. U. Tel. Co.* v. *James,* 162 U. S. 654, 16 Sup. Ct. 934, 40 L. Ed. 1106; *W. U. Tel. Co.* v. *Tyler,* 90 Va. 299, 44 Am. St. Rep. 910, 18 S. E. 281; *Reid* v. *W. U. Tel. Co.,* 56 Mo. App. 173; *Ames* v. *Kirby,* 71 N. J. L. 445, 59 Atl. 559; *W. U. Tel. Co.* v. *Hughes,* 104 Va. 246, 51 S. E. 227.

2. Was the message involved here interstate commerce?

This also is determined by the authorities, though the cases referred to are without exception cases of transportation by common carriers. Inasmuch, however, as under the express provisions of the act to regulate commerce, telegraph and telephone companies are common carriers, these decided cases are conclusive of the question here involved. Since the case of *Hanley* v. *Kansas City, &c. Ry. Co.,* 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333, there has been no dissent from the proposition that although the point of shipment and the point of delivery are within the same

State, if during the course of transportation the property passes without the boundaries of the State, such a shipment is interstate commerce. *Wichita Falls R. Co.* v. *Asher* (Tex. Cir. App.), 171 S. W. 1114; *Traynham* v. *Charleston, &c. R. Co.,* 92 S. C. 43, 75 S. E. 381; *Sternberger* v. *Railway,* 29 S. C. 510, 7 S. E. 836, 2 L. R. A. 105; *Fraiser & Co.* v. *Railway,* 81 S. C. 162, 62 S. E. 14; *Hunter* v. *Railway,* 81 S. C. 169, 62 S. E. 13; *Crescent Brewing Co.* v. *Oregon Short Line R. Co.,* 24 Idaho 106, 132 Pac. 975; *L. & N. R. Co.* v. *Allen,* 152 Ky. 145, 153 S. W. 198; *State ex rel. Railroad Warehouse Commission* v. *C., St. P., M. & O. R. Co.,* 40 Minn. 267, 41 N. W. 1047, 3 L. R. A. 238, 12 Am. St. Rep. 730; *Milk Producers Pro. Asso.* v. *D. L. & W. R. Co.,* 7 I. C. C. Rep. 92; *Mires* v. *St. Louis & S. F. R. Co.,* 134 Mo. App. 379, 114 S. W. 1052; *Hardwick Farmers' Elevator Co.* v. *Chicago, R. I. & P. Ry. Co.,* 110 Minn. 25, 124 N. W. 819, 19 Ann. Cas. 1088; *St. Louis, &c., R. Co.* v. *State,* 87 Ark. 562, 113 S. W. 203; *Patterson* v. *Mo. Pac. R. Co.,* 77 Kan. 236, 94 Pac. 138, 15 L. R. A., N. S., 733; *United States* v. *Erie R. Co.* (D. C.), 166 Fed. 352.

Upon principle we cannot conceive how any different doctrine can be applied to telegraphic messages between points within the State, which in the course of their transmission pass without the State into any other State or the District of Columbia. We conclude, therefore, that under the authorities the message involved herein was interstate commerce.

3. It has been held in a long line of decisions that even though the message be interstate commerce, under certain conditions, in clear cases of negligence occurring within this State, the penalty of $100 imposed by the Virginia statute may be enforced. All of these cases, however, arose prior to the amendment of the act to regulate commerce of June 18, 1910, providing that telegraph, telephone and cable companies, whether wire or wireless, engaged in interstate commerce, shall be deemed to be common car-

riers within the meaning and purpose of the act to regulate commerce, shall be required to file their schedules showing their rates, fares, joint classifications and practices with the Interstate Commerce Commission, subjecting them in general terms to all of the rules and regulations applicable to common carriers, and authorizing the Interstate Commerce Commission "to determine and prescribe what will be the just and reasonable individual or joint rate or rates, charge or charges, to be thereafter observed in such case as the maximum to be charged, and what individual or joint classification, regulation, or practice is just, fair, and reasonable, to be thereafter followed, and to make an order that the carrier or carriers shall cease and desist from such violation to the extent to which the commission finds the same to exist, and shall not thereafter publish, demand, or collect any rate or charge for such transportation or transmission in excess of the maximum rate or charge so prescribed, and shall adopt the classification and shall conform to and observe the regulation or practice so prescribed." (Section 15).

Since that time, the decisions appear to be uniform in holding that Congress, to use the language of Harrison, J., in the case of *Western Union Telegraph Co.* v. *Bilisoly*, 116 Va. 562, 82 S. E. 91, "has occupied the field of regulation with respect to interstate telegrams," and that "The act of Congress has ousted the State of jurisdiction over the subject." This case, holding that the statute here involved can no longer be invoked in such cases, was followed in *Western Union Tel. Co.* v. *First National Bank of Berryville*, 116 Va. 1009, 83 S. E. 424.

In *Western Union Telegraph Co.* v. *Brown*, 234 U. S. 542, 34 Sup. Ct. 955, 58 L. Ed. 1457, which was an action of tort from South Carolina, seeking a recovery of damages for mental anguish arising out of the alleged negligent failure of a telegraph company to deliver a telegram in the city of Washington, D. C., sent from South Carolina, the action be-

ing based upon a statute of South Carolina (S. C. Civ. Code, sec. 2223), authorizing the recovery of damages for mental anguish, the judgment of the Supreme Court of South Carolina was reversed upon the ground that the action could not be maintained without infringing upon the exclusiveness of the control of the Congress of the United States over the District of Columbia; but Mr. Justice Holmes added, in closing his opinion, this language: "But the act (referring to the South Carolina statute) also is objectionable in its aspect of an attempt to regulate commerce among the States."

A case rich in citations is that of *Gardner* v. *Western Union Telegraph Co.,* 231 Fed. 405, 145 C. C. A. 399. This case arose in Oklahoma, and was an action for damages for delay in sending a night letter from Syracuse, Kansas, to Quinland, Oklahoma. The evidence showed that on account of a delay of five days in the delivery of the message, the plaintiff suffered material damage because of the decrease in the market value of broom corn. It was contended by the paintiff that the condition upon the telegraph blank undertaking to relieve the telegraph company from liability "unless the claim should be presented in writing within sixty days after the message is filed with the company for transmission," was void because section 9, Art. 23, of the Constitution of Oklahoma provided that, "Any provision of any contract or agreement, express or implied, stipulating for notice or demand other than such as may be provided by law, as a condition precedent to establish any claim, demand or liability, shall be null and void." The plaintiff had failed to present his claim in writing within sixty days. The Supreme Court of Oklahoma, in previous cases, had decided that the section was valid as to telegraph companies. The Circuit Court of Appeals, Eighth Circuit, admitted that it was bound by the construction of the Constitution of the State of Oklahoma as made by the Supreme Court of that State, if applicable to the case then being considered. It

was contended by counsel for the company, however, that by the act to regulate commerce, as amended June 18, 1910 (36 Stat. 539), the United States had occupied the whole field of transmission of interstate messages by telegraph, and that, therefore, the Constitution of Oklahoma had been suspended so far as the section in question is concerned. The court sustained this contention, and said:

"Pertinent to this contention, sections 1, 2, 6, 12 and 15 of the act to regulate commerce, as amended, are cited. We cannot repeat those sections here, but it appears beyond question therefrom that, in so far as the provisions of the act to regulate commerce are applicable, it applies to all interstate telegraph business; that as to all interstate business, telegraph, telephone, and cable companies are common carriers within the meaning and purposes of the act; that as to their interstate business telegraph companies must print and publish their rates, rules, classifications, regulations, and practices, and file same with the Interstate Commerce Commission; that they shall establish reasonable rates, rules, regulations, and practices, but messages may be classified into day, night, repeated, unrepeated, and such other classes as are just and reasonable, and different rates may be charged therefor; that all rates, regulations, and practices must be reasonable and just; that penalties are imposed for any attempt to evade the published rates, rules, practices, or regulations; that the Interstate Commerce Commission shall determine what is a just and reasonable regulation or practice; that the rules and regulations established by telegraph companies or other common carriers are deemed reasonable and just until changed by the Interstate Commerce Commission. It results necessarily from the foregoing conclusions that Congress has not only taken possession of the field of interstate commerce by telegraph, but has also specifically prescribed the rules which shall govern the transaction of such commerce."

The doctrine is also sustained by the following cases: *Dodge* v. *Adams Express Co.,* 54 Pa. Super. Ct. 422; *Ridge* v. *Erie R. Co.,* 54 Pa. Super. Ct. 603; *Strause Iron Co.* v. *Western Union Tel. Co.,* 59 Pa. Super. Ct. 125; *Western Union Tel. Co.* v. *Compton,* 114 Ark. 193, 169 S. W. 946. In the latter case the court first determined that Congress had not fully occupied the field, as to telegraph companies, and hence that the plaintiff could recover for mental anguish under the Arkansas statute; but after the opinion of the Supreme Court of the United States in the case of *Western Union Telegraph Co.* v. *Brown,* 234 U. S. 542, 34 Sup. Ct. 955, 58 L. Ed. 1457, was called to its attention, upon rehearing, the Arkansas court reversed itself. *Western Union Tel. Co.* v. *Johnson,* 115 Ark. 564, 171 S. W. 859; *W. U. Tel. Co.* v. *Simpson,* 117 Ark. 156, 174 S. W. 232; *W. U. Tel. Co.* v. *Holder,* 117 Ark. 210, 174 S. W. 552; *W. U. Tel. Co.* v. *Stewart,* 120 Ark. 631, 179 S. W. 813; *W. U. Tel. Co.* v. *Schoonmaker* (Tex. Cir. App.), 181 S. W. 264.

That common carriers may limit their liability when transporting baggage or property in interstate commerce by regulations contained in their published tariffs filed with and approved by the Interstate Commerce Commission, and that such regulations supersede State statutes and policies and furnish the exclusive rules for determining the carriers' liability, is determined by the Supreme Court of the United States in *Adams Express Co.* v. *Croninger,* 226 U. S. 500, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. N. S. 257; *Boston & Maine R. Co.* v. *Hooker,* 233 U. S. 97, 58 L. Ed. 868; *Atchison, &c., R. Co.* v. *Robinson,* 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901; *Cleveland, &c., R. Co.* v. *Dettlebach,* 239 U. S. 593, 36 Sup. Ct. 177, 60 L. Ed. 453; *Georgia, &c., R. Co.* v. *Blish Co.,* 241 U. S. 195, 36 Sup Ct. 541, 60 L. Ed. 948. The telegraph companies so undertake to limit their liability by the conditions under which they accept and transmit interstate telegrams, and until disap-

proved by the Interstate Commerce Commission, these conditions furnish the exclusive rules for determining their liability, subject to the Federal statutes and general law, any State statute to the contrary notwithstanding.

We feel that this unbroken current of authority is controlling and hence the judgment of the court below must be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed.*