# Richmond.

## WESTERN UNION TELEGRAPH CO. V. WILLIAM MAHONE, JR.

### January 11, 1917.

1. TELEGRAMS AND TELEPHONES—*Interstate Commerce.*—Where a telegraphic message between two points in the State is transmitted to a point without the State and from there relayed to the point of delivery within the State, this constitutes interstate commerce, although it was possible to have sent the message between the two points without its leaving the State.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of debt. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Hughes, Little & Seawell, Albert T. Benedict* and *Francis Raymond Stark,* for the plaintiff in error.

*L. B. Way* and *E. A. Bilisoly,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The facts in this case are these: William Mahone, at eleven o'clock on the morning of February 6, 1915, delivered to the Western Union Telegraph Company, at its office in the city of Norfolk, Va., a telegram addressed to William Mahone, Jr., at Tye River, Virginia, as follows:

"Stock mentioned in my letter yesterday sold. Need not come."

Tye River is a station on the Southern Railway between Lynchburg, Va., and Washington, D. C., and according to the testimony the method of transmitting such a message is from Norfolk, Va., through the city of Washington, D. C., and thence by relaying it to Tye River, Va. The message was apparently transmitted from Norfolk to Washington, D. C., promptly, but was not transmitted from Washington to Tye River until about 2:30 P. M. of that day, and the statutory penalty is claimed on account of this delay.

Witnesses for the telegraph company testified that the message was sent to Washington to be relayed to Tye River because that was the only practical and convenient way to transmit it; that there is no direct wire from Norfolk, Va., to Tye River; that in the arrangement of their business there are only three offices in Virginia for the relay of telegraphic dispatches, one in Norfolk, one in Richmond, and one in Lynchburg; that there is no direct wire to Tye River from either Richmond or Norfolk, and there is no direct wire from Norfolk to Lynchburg, but there is a direct wire from Norfolk to Washington, D. C., and a direct wire from Washington, D. C., to Tye River; that sending it through Washington entails only two handlings, and if it had been handled in any other way it would have required more than two handlings, and thus the probability of delay and mistake would have been greater if the message had been handled in any other manner than through the relay office at Washington.

The Supreme Court of the United States, however, has made it plain that in determining such questions they will only consider the facts and not inquire as to motives. A local dealer in intoxicating liquors who lived in the State of Kansas and also maintained an office and warehouse in a small village, Stillings, on the Missouri side of the Missouri river, which was connected by a bridge with Leavenworth, Kansas, transacted his business thus: After receiving his orders from his Kansas customers, he would make

deliveries from his warehouse on the Missouri side of the river in his own horse-drawn wagons, either directly or by hauling the liquor to the Leavenworth railway depot for transportation to other Kansas points. The State of Kansas sought to enjoin him from carrying on this business in violation of the laws of Kansas. He claimed that his business was interstate commerce, and the Supreme Court of the United States sustained his contention, saying: "The Supreme Court of the State gave much weight to the dealer's past conduct, and animating purpose, and relied upon the language quoted from *Austin* v. *Tennessee,* 179 U. S. 343, 45 L. Ed. 224, 21 Sup. Ct. 132, and *Cook* v. *Marshall County,* 196 U. S. 261, 49 L. Ed. 471, 25 Sup. Ct. 233. Considered in the light of our former decisions, if the business carried on by the plaintiff in error after removal of his office to Stillings had been conducted by a dealer who had always operated from that place, we think there could be no serious doubt of its interstate character. And we cannot conclude that a legal domicile in Kansas, coupled with a reprehensible past and a purpose to avoid the consequences of the statutes of the State suffice to change the nature of the transactions." *Kirmeyer* v. *State of Kansas,* 236 U. S. 568, 59 L. Ed. 721, 36 Sup. Ct. 419.

There is no substantial difference between the law applicable to this case and that applicable to the case of *Western Union Telegraph Co.* v. *L. J. Bolling,* 120 Va. 413, 91 S. E. 154, this day decided, and for the reason there stated, the judgment of the lower court in this case will be also reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed.*