# Richmond.

## WESTERN UNION TELEGRAPH COMPANY V. BOWLES.

### March 13, 1919.

Absent, Prentis, J.

1. TELEGRAPH AND TELEPHONE COMPANIES—*Interstate Commerce.*—Transmission of intelligence by wire is commerce.

2. TELEGRAPH AND TELEPHONE COMPANIES—*Interstate Commerce—Message Between Two Points Within a State that Passes Without the tate.*—The transmission of a telegraph message between two points in the State which in the course of its transmission passes out of the State is interstate commerce, and this is true, although the message might have been sent direct to its point of destination without passing out of the State, and in fact went through that point, where it appeared that the route chosen was the one which afforded the quickest service to patrons, and was the one in regular use under the practice and requirements of the company.

3. TELEGRAPH AND TELEPHONE COMPANIES—*Interstate Commerce—Jurisdiction of State.*—Congress, by the act to regulate commerce as amended June 18, 1910 (36 Stat. 539), has occupied the whole field of regulation with respect to interstate telegrams, and has thus ousted the State of its jurisdiction over the subject.

5. TELEGRAPH AND TELEPHONE COMPANIES—*Test of Interstate Commerce.*—The interstate character of a message must be tested by the actual facts as to its transmission and not by the motives of the company, and the adoption by the company of an interstate route of transmission relegates the transaction to the domain of federal control.

5. TELEGRAPH AND TELEPHONE COMPANIES—*Interstate Commerce—Acts 1916, p. 757.*—The act of the General Assembly, approved March 21, 1916 (Acts 1916, p. 757) entitled "an act to define intra-state messages and what is held not to be such a message,". is of no force, being an attempt to legislate upon a subject over which the State has no jurisdiction or power of control. This statute undertakes to define interstate commerce, as to telegraphic communications, and to confer upon the courts of the State the right and power to inquire into and

pass upon the reasonableness and expediency of the rules and methods by which such commerce is carried on. That messages between two points within, but transmitted over lines passing without the State, constitute interstate commerce, and, as such, are subject to federal control, is a proposition based upon federal decisions and federal statutes. This being true, State law upon the subject must give way, whether such laws take the form of judicial decisions or legislative enactments.

6.  UNITED STATES COURTS—*Construction of State Laws—State Courts—Construction of Federal Laws.*—Upon all questions arising under State Constitutions and laws, where nothing is involved of national authority or national right, the federal courts are bound to accept the construction placed by the courts of a State upon its Constitution and statutes whenever the former courts are called upon to decide similar questions. But the decision of all questions arising under the laws of the United States, including, in particular, the definition and meaning of the commerce clause of the Constitution, rests finally and conclusively with the federal courts.

Error to a judgment of the Circuit Court of Henry county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Hughes, Little & Seawell* and *Whittle & Whittle,* for the plaintiff in error.

*Wm. M. Peyton* and *I. M. Clingenpeel,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

I. S. Bowles delivered to the agent of the Western Union Telegraph Company at Bassett a prepaid message to be transmitted to Dr. M. E. Hundley, at Martinsville. The points of origin and destination are both within this State.

Following the method then, and for some years theretofore, in regular use by the company, this message was forwarded from Bassett to Richmond over a direct wire which passes through two telegraph offices in North Carolina before it reaches Richmond, the relay point for messages coming into the territory in which Martinsville is situated. This wire passes through the Martinsville office, but is not designed for direct use there. From Richmond the message, like all others of its class, was sent over another direct wire which runs through two other North Carolina offices before reaching Martinsville. The agent at Bassett testified that the message could have been sent direct to Martinsville, but that the route by which he did send it was the one which afforded the quickest service to patrons, and was the one in regular use under the practice and requirements of the company. This testimony is not in any way disputed or contradicted.

No complaint was made of any delay in transmission or delivery, but the message as given to Dr. Hundley was signed "O. S. Bowles," the first initial of the sender's name having been changed from "I" to "O"; and the present action was brought by Bowles, based upon this error, to recover the statutory penalty of $100.00, prescribed in section 1294-h, clause 5, of the Code of 1904. There was a verdict and judgment below in his favor.

The decisive question in the case is whether the message, as handled by the company, constituted interstate commerce, and thus lay beyond the realm of State control and regulation. As a matter of established law, we think it did.

[1, 2, 3]   In *Western Union Telegraph Co. v. Bolling*, 120 Va. 413, 91 S. E. 154, Ann. Cas. 1918 C, 1036, the following propositions are shown to be conclusively settled by authority, and are accordingly adopted as law in this jurisdiction: (1) Transmission of intelligence by wire is commerce; (2) The transmission of a telegraph message between two

points in the State which in the course of its transmission passes out of the State is interstate commerce; (3) Congress, by the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379), as amended June 18, 1910 (36 Stat. 539 C. 309), has occupied the whole field of regulation with respect to interstate telegrams, and has thus ousted the State of its jurisdiction over the subject.

The fact that the message here involved went in the first instance through Martinsville, and might, if the company's rules had so required, have been received there without passing out of the State, does not, as contended by the defendant in error, differentiate the case in principle from the *Bolling Case.* It is true that in the latter case there appeared to be no means of transmitting the message except through a relay point outside of the State; but in the companion case of *Western Union Telegraph Co.* v. *Mahone,* 120 Va. 422, 91 S. E. 157, decided the same day, the message involved might have been sent from the point of origin to the point of destination without leaving the State; and this court there said: "There is no substantial difference between the law applicable to this (*Mahone*) *Case* and that applicable to the case of *Western Union Telegraph Co.* v. *Bolling,* this day decided."

[4] It was contended in the *Mahone Case,* as here, that inasmuch as the message could have been sent over an intrastate route, the company could not impress upon it an interstate character by a different routing. But this court held, upon authority, that the interstate character of the message must be tested by the actual facts as to its transmission and not by the motives of the company; and, further, as a necessary corollary from the decision in the *Bolling Case,* that the adoption by the company of an interstate route of transmission relegated the transaction to the domain of federal control.

Whether the power of regulation rests with the State or

with the United States, the really important question is one of public service. If only the patrons of the company at Bassett and Martinsville were concerned, there would seem to be little doubt, certainly to a mind unfamiliar with the art of telegraphy and untrained in its practical use, that the best and quickest way to serve these two points would be by the use of a direct instead of a circuitous line. But the company serves a vast territory and a multitude of patrons, and in doing so maintains a large organization and a complex system, which it is by law required to so direct and control as to best and most efficiently serve the general public. If it is failing in its duty in this respect as to messages of the kind here involved, the question is one with which (whether unfortunately or not) the State cannot deal, for the reasons already set out. We can no more say that the message from Bassett to Martinsville should have been sent direct than we could have said that the message in the *Mahone Case* should have been so sent.

[5]    It follows from what has been said that the act of the General Assembly, approved March 21, 1916 (Acts 1916, p. 757), entitled "an act to define intrastate messages and what is held not to be such a message," strongly relied upon by the defendant in error, is of no force, being an attempt to legislate upon a subject over which the State has no jurisdiction or power of control. The act is as follows:

"Be it enacted by the General Assembly of Virginia, that any message accepted by any telegraph company doing business in this State to be sent to another point in this State, shall be deemed to be an intrastate message. Any telegraph company that would give such message as aforesaid the character, or fix upon such message an interstate character by virtue of the fact that in the course of transit of said message it is relayed or carried out of the State in sending it, shall introduce evidence that the route used in

sending said message was the only practicable or feasible and the most expeditious manner of sending said message, and shall introduce as a part of said evidence, charts and maps showing lines of wires and relay stations to prove such route as the most desirable and proper route to have been used, upon request of any complainant."

[5, 6]    This statute undertakes to define interstate commerce, as to telegraphic communications, and to confer upon the courts of the State the right and power to inquire into and pass upon the reasonableness and expediency of the rules and methods by which such commerce is carried on.    That messages between two points within, but transmitted over lines passing without the State, constitute interstate commerce, and, as such, are subject to federal control, is a proposition based upon federal decisions and federal statutes, as fully appears from the *Bolling* and *Mahone Cases* and the authorities therein cited. This being true, State laws upon the subject must give way, whether such laws take the form of judicial decisions or legislative enactments.    Upon all questions arising under State Constitutions and laws, where nothing is involved of national authority or national right, the federal courts are bound to accept the construction placed by the courts of a State upon its Constitution and statutes whenever the former courts are called upon to decide similar questions. (Cooley's Const. Lim. 7th ed. p. 31, and citations; 5 R. C. L. p. 705, sec. 17, and citations in note 10).    But the decision of all questions arising under the laws of the United States, including, in particular, the definition and meaning of the commerce clause of the Constitution, rests finally and conclusively with the federal courts.    Cooley's Const. Lim. 7th Ed. p. 25 and notes; 5 R. C. L. p. 705, sec. 17 and citations in note 9; *United States* v. *Hill*, 248 U. S. 420, 39 Sup. Ct. 143, 63 L. Ed.

For the foregoing reasons, and upon the authorities cited in support thereof, the judgment must be reversed.

*Reversed.*