# W. W. DEARDORFF and J. R. HERYFORD, Partners, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

### In Banc, December 31, 1914.

**INTERSTATE SHIPMENT: From Hale, Mo., to Kansas City Stockyards: Estoppel by Contract.** A shipment of stock from Hale, Missouri, to the Kansas City Stock Yards, the place for unloading the stock being on the Kansas side of the line dividing Missouri and Kansas, is an interstate shipment; and the fact that, after the stock were transported in the cars across the State line into Kansas and were there unloaded, they were driven on foot back across the State line to sale pens in Missouri allotted by the Stock Yards Company to the shipper's commission merchant, and there exposed to sale and sold, had no effect whatever on the character of the shipment made by the railroad company.

*Held,* by GRAVES, J., dissenting, with whom BROWN, J., concurs, that, it being undisputed that the effreightment contracts read "from Hale, Mo., to Kansas City, Mo.," the railroad company, having thus contracted, cannot gainsay the terms of its contract so far as to make an interstate shipment out of a contracted intrastate one, but is estopped by the contract from making such a claim.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

REVERSED AND REMANDED (*with directions*).

*O. M. Spencer, Lozier & Morris, M. G. Roberts* and *H. J. Nelson* for appellant.

Since this case was briefed and argued in Division No. 1, the Supreme Court of the United States has wiped out the last vestige of a hope the plaintiffs had of escaping a decision that the shipments in question were intrastate, because said hope of plaintiffs was based on fact that there was proof some of the

shipments moved on contacts reading "Kansas City" without a State being mentioned, and a very few contracts read "Kansas City, Mo." The Supreme Court of the United States holds the reading of the shipping contract is immaterial. Railroad Com. v. Railroad, 229 U. S. 340; C. M. & St. P. v. Iowa, 233 U. S. 343; Baer Bros. v. D. & R. G., 233 U. S. 490. The reasoning of these cases is that commerce means movement, that a commodity is commerce only when it moves and because thereof, and that no other fact is material in determining whether a shipment is interstate or intrastate commerce.

*John P. Benson* and *Jones & Conkling* for respondents.

In his brief, appellant's counsel says that the last vestige of hope which respondents have in this case has been wiped out by the Supreme Court of the United States. With all due deference to appellant's counsel, we take issue with him. The case of Railroad Commissioners v. T. & P. Ry. Co., 229 U. S. 340, cited by appellant's counsel does not in the least militate against respondents. In that case it appears that from the very beginning the commodities of commerce were treated by both shipper and carrier as interstate, and that the tariffs were governed by those on file with the Interstate Commerce Commission. Such are not the facts in the case at bar. There is no contention on the part of appellant that the tariffs on file with the Interstate Commerce Commission applied to or governed the shipments of respondents' stock. Nor is there any contention that respondents and appellant, in any way or manner, whatever, treated or recognized said transportation as interstate commerce. It is true that appellant's answer, by way of affirmative defense, alleged that the freight charges for said shipments were not determined by, nor in any way gov-

erned by, the laws of Missouri. Even if this allegation of the answer should be construed to mean that it was the contention of appellant that the laws, rules and rates governing interstate commerce applied to this case, still, it appears from the printed record that appellant abandoned that defense, in that no effort was made by appellant to prove (although that right was reserved by paragraph 9 of the agreed statement of facts) that the shipments in question were made on an interstate rate. In plaintiff's petition, the local rate (intrastate rate) is alleged, and the amount of the rate specifically set out. The rate thus alleged in plaintiff's petition is specifically admitted in the agreed statement of facts upon which this cause was submitted. So, then, so far as the rate in question is concerned, it stands admitted by the agreed facts that the shipments were made on the local or intrastate rate, but in the face of this admission, appellant seeks to avoid the laws of this State and its attending penalties, because a portion of the stockyards and of the Live Stock Exchange Building were across the line in the State of Kansas, and because its unloading chutes, where it unloaded stock, were on the Kansas side. This, in view of the fact that the rates charged were intrastate, together with the fact that the shipping contracts read either to "Kansas City, Missouri," or to "Kansas City," is a very fine-spun and, to say the least, a weak defense. To appropriate some of the language in the concluding paragaph of appellant's supplemental brief, is mere "juggling." There is an entire absence of evidence showing that the shipments in question were in any way, manner or form, whatever, recognized or treated by either plaintiff or defendants as interstate commerce. In the absence of evidence showing that an interstate rate was charged, or that the commerce was intended to be interstate, it would be unreasonable to construe it to be interstate merely because that in getting it to the unload-

ing chutes, defendant pushed the cars in which the stock was loaded up to the unloading chute on the Kansas side. Can it be said that since the stock pens are both in Missouri and Kansas, that the defendant could not contract to carry stock from any point in Missouri with the point of destination being at the stock pens, on the Missouri side and charge therefor the intrastate rate and accomplish the delivery by unloading the stock at an unloading chute on the Kansas side? It seems to us that a contrary argument would at once appear to be absurd and unreasonable. If so then defendant's contention that the shipments in question became interstate merely because the stock was unloaded at the unloading chutes on the Kansas side is absurd and unreasonable. The agreed statement of facts show that the sale pens of plaintiff's consignees were on the Missouri side and the stock was there lotted and sold. This is not the first time such a contention as appellant now makes has been made in an appellate court of this State. In the case of Scammon v. Railroad, 41 Mo. App. 194, the same point, namely, that the shipments in question were interstate because the stockyards were located partly in Missouri and partly in Kansas, was asserted —but, that point was squarely and thoroughly decided against appellant. Eleven of the contracts read to "Kansas City, Missouri." Hence, Kansas City, Missouri, as to those, was the point of delivery, but as to those of the contracts which read to "Kansas City" defendant could discharge its obligation by delivering the stock at Kansas City, Missouri. The rate it charged was to Kansas City, Missouri, and if defendant chose to deliver the stock by taking them to the Kansas side and unloading them at chutes on that side of the State line, such was a matter of its own choice and for its own convenience, and cannot and does not change the character of the commerce from intrastate to interstate. We confidently assert that no

case can be found holding to a view contrary to the Kansas City Court of Appeals in the Scammon case, supra. To hold under these facts, that the shipments were interstate, would be to disregard the established and admitted facts as to the rate and the language of the shipping contracts offered in evidence, or, stated differently, it would be to hold that although the contracts and rates applied to intrastate shipments, yet, because of the fact that part of the yards were situated in Kansas, it was therefore an interstate shipment, or, in other words, it would be to hold that in order to determine the character of a shipment originating in the State of Missouri, destined to the Kansas City stockyards, and because the State line runs through the stockyards, that part of the stockyards on the Kansas side will control and determine the character of the shipment—make it interstate. This we say is unreasonable and untenable. We call the court's attention to Campbell v. Railroad, 17 L. R. A. 443, where ·it is held that shipments between points within the same State do not constitute interstate commerce merely because part of the transit runs through another State. The case of Railroad v. Iowa, 233 U. S. 343, and Baer Bros. v. D. & R. G., 233 U. S. 490, are not in point on any of the facts in the case at bar. They are wholly distinguishable from this case in important particulars. In the first case, the shipment originated in Illinois and terminated at points in the interior parts of the State of Iowa. In the other, the shipment originated at St. Louis, Missouri, with point of destination at Leadville, Colorado. The shipping bill read, "In good order to be delivered to Baer Bros. Company, at Leadville, Colorado, via. the Denver and Rio Grande," which clearly shows that the shipment was interstate.

WOODSON, J.—This suit was instituted in the circuit court of Carroll county, by the plaintiffs, under

sections 1133, 1140 and 1153, Revised Statutes 1899, against the defendant, to recover certain alleged over-charges and penalties incident thereto, on shipments of live stock, made by them from Hale, Missouri, to the Kansas City Stock Yards, which are partly located in the State of Kansas and partly in the State of Missouri, the entrance of which is in Kansas just across the line separating the two States.

The plaintiffs had judgment below and defendant appealed to this court.

The cause was argued and submitted in Division No. 1, and assigned to our learned Commissioner, BROWN, to write. For reasons not necessary to be here stated his opinion failed to receive the approval of the court, and for that reason the cause was trans-ferred to Court In Banc. It was there reargued and submitted, and the cause was assigned to the under-signed to write the opinion herein, for the court.

The pleadings are in no manner assailed; and for that reason it is not necessary to consider them further, than to state that they presented the issues which are shown to be true by the agreed statement of facts filed and largely upon which the cause was submitted to the trial court.

The agreed statement of facts is as follows:

"It is hereby stipulated and agreed by and be-tween the plaintiffs and defendant in the above enti-tled cause, that this cause shall be submitted to the court without a jury, upon the following agreed state-ment of facts, to-wit:

"1. It is agreed that this suit was instituted on December 9, 1904, and that within three years next prior to the institution of this suit, the plaintiffs shipped over the railroad of defendant various cars of live stock from Hale, Missouri, to Kansas City Stock Yards, as listed on Exhibits 'A,' 'B,' 'C,' and 'D,' which are attached hereto and made a part hereof, upon which shipments the plaintiffs paid to the defend-

ant the amount of freight charges and at the rate per cwt. as follows, to-wit:

"Between the 12th day of December, 1901, and the 25th day of April, 1904, 113 cars of hogs, weighing 1,906,300 pounds at a rate of twelve and one-half cents per hundredweight, total freight charges on said 113 cars being $2382.84, as shown on Exhibit 'A.'

"From April 26, 1904, to December 9, 1904, thirty-four cars of hogs, weighing in the aggregate 581,820 pounds, at a rate of thirteen and one-half cents per hundredweight, total freight chages on said thirty-four cars being $785.45 as shown on Exhibit 'B.'

"From December 9, 1901, to April 25, 1904, twenty-four cars of cattle, weighing in the aggregate 540,800 pounds, at a rate of ten cents per hundredweight, the total freight charges on said twenty-four cars being $540.80, as shown on Exhibit 'C.'

"From April 26, 1904, to December 9, 1904, five cars of cattle weighing in the aggregate 112,200 pounds at a rate of eleven and one-half cents per hundredweight, the total freight charges on said five cars being $129.04, as shown on Exhibit 'D.'

"2. It is agreed that from December 9, 1901, to April 26, 1904, the defendant's published tariff carload rate from Hale, Misouri, to Kansas City Stock Yards was twelve and one-half cents per hundredweight on hogs, ten cents per hundredweight on cattle; and that from April 26, 1904, to the date of the filing of this suit, December 9, 1904, the defendant's published tariff carload rate, from Hale, Missouri, to Kansas City Stock Yards was thirteen and one-half cents per hundredweight on hogs and eleven and one-half cents per hundredweight on cattle.

"3. It is agreed that from December 9, 1901, to the date of the filing of this suit, to-wit, December 9, 1904, the defendant's tariff rate from Carrollton, Missouri, to Kassas City Stock Yards was eleven cents per hundredweight on hogs and nine and one-half

cents per hundredweight on cattle; that on February 15, 1907, the defendant raised its rates on live stock from Carrollton, Missouri, to Kansas City Stock Yards so that since that time its rates thereon from Carrollton to Kansas City Stock Yards have been the same as its rates from Hale to Kansas City Stock Yards.

"4. It is agreed that at all times between December 9, 1901, and December 9, 1904 the defendant operated a line of railroad from Carrollton, Missouri, through Hale, Missouri, to Kansas City Stock Yards, and that during said period the defendant transported cattle and hogs from Carrollton, Missouri, to Kansas City Stock Yards through Hale, Missouri, and that at the times mentioned in plaintiffs' petition herein, defendant as such common carrier was engaged in the transportation and carriage of live stock from Hale, Missouri, to said Kansas City Stock Yards.

"5. It is agreed that at the station of Carrollton, Missouri, on defendant's line, it has the competition of the Wabash Railroad Company and of the Atchison, Topeka & Santa Fe Railway Company for the live stock traffic from Carrollton, Missouri, to Kansas City Stock Yards; and that prior to and from December 9, 1901, to December 9, 1904, the rates of the Wabash Railroad Company and the Atchison, Topeka & Santa Fe Railway Company on cattle and hogs from Carrollton, Missouri, to Kansas City Stock Yards, were the same as the above stated rates charged by this defendant after December 9, 1901, from Carrollton, Missouri, to Kansas City Stock Yards on the same commodities; and that during said period the defendant made and so maintained the same rates on cattle and hogs from Carrollton, Missouri, to Kansas City Stock Yards as were maintained by said Wabash Railroad Company and the Atchison, Topeka & Santa Fe Railway Company, in order to meet the competition of said last-named companies and secure any of said traffic.

"6. It is agreed that from the 9th day of December, 1901, to the 9th day of December, 1904, the only railroad entering Hale, Missouri, or engaged in the transportation of live stock from Hale, Missouri, to Kansas City Stock Yards, was the railroad of the defendant, so that the defendant had no competition on the live stock traffic from Hale, Missouri, to Kansas City Stock Yards during said period.

"7. It is agreed that during all the times hereinbefore mentioned, the lines of the Wabash Railroad Company from Carrollton, Missouri, to Kansas City, was sixty-six miles in length, and the line of the Atchison, Topeka & Santa Fe Railway Company between the same points was sixty-seven miles in length, and that the line of the defendant between the same points was one hundred and fifty-five miles in length.

"8. It is agreed that the said Kansas City Stock Yards are located partly in the State of Kansas and partly in the State of Missouri; that the main freight yards of the defendant were at all times located in Missouri; that the trains in which plaintiffs' said live stock was carried from Hale to Kansas City moved first into said main yards in Missouri; that the cars containing plaintiffs' said live stock were taken from said yards in Missouri to the unloading chutes of the Kansas City Stock Yards Company by the engines and employees of defendant over a track owned by defendant and leading from said main freight yards to the Kansas City Stock Yards, which said track is located for some distance in the State of Kansas and the chutes at which plaintiffs' live stock was unloaded from the cars are located in the State of Kansas; that said cars were placed at said chutes in Kansas by the engines and employees of the defendant and pulled by them from said chutes as soon as plaintiffs' live stock was unloaded therefrom; said live stock of plaintiffs' was driven out of the cars into the chutes by the employees of the Kansas City Stock Yards Company,

the owner of said stockyards, and that said live stock of plaintiffs was driven by the employees of said Stock Yards Company, from said chutes in Kansas, to the sale pens in Missouri allotted by said Stock Yards Company to the plaintiffs' commission men, and there exposed to sale, and sold by said commission men; that the commission men to whom said live stock of plaintiffs was consigend had their office in that part of the Live Stock Exchange Building located in Kansas; that a portion of said exchange building is located in Kansas and a portion thereof in Missouri.

"9. It is agreed that upon the submission of this cause either party to this suit may offer competent proof of contracts, if any, made between plaintiffs and defendant for the transportation of the live stock of plaintiffs mentioned herein, and either party may offer competent proof to contradict or explain such evidence, if any, as may have been admitted at the instance of the other party in relation to contracts for transportation of plaintiffs' live stock."

The exhibits referred to in the agreed statement consist of many pages of the printed record, the year, month, and day of each shipment, the initials and number of each car shipped, from where to where, the kind of live stock, the weight in each car. The totals of all of those various items tally with the aggregates set forth in the agreed statements of facts.

Such additional facts as were shown by the evidence introduced will be considered in the course of the opinion.

I. Counsel for appellant assign many reasons why the judgmest of the circuit court should be reversed, but the view we have taken of the case dispenses with the necessity of considering but one of them.

The facts are, that the town of Hale, the point from which respondents shipped the stock in ques-

Deardorff & Heryford v. Railroad.

Interstate Commerce: To Kansas City Stock Yards.

tion, is located in the State of Missouri, and the Kansas City Stock Yards are located partly in the State of Missouri and partly in the State of Kansas; and the only places furnished by said yards, an independent corporation, for unloading stock shipped thereto over the appellant's line of road are located in the State of Kansas, and in order for the appellant to have delivered the stock shipped to those yards, it was necessary for it to carry the same over the State line into the State of Kansas, and there unload the stock into the yards where appellant had agreed to carry and deliver it.

The simplest forms of interstate shipments within the meaning of the commerce clause of the Constitution of the United States are those which consist of the shipment of some article of commerce designed from the initial point of shipment in one State in the Union, to be carried to another point in another State thereof, by means of one and the same common or private carrier or by different carriers, public or private.

This definition covers the case at bar, as a glove covers the hand, as shown by the authorities to be presently cited, for the reason that it was the intention and agreement of both parties to the contracts of shipment here involved, that the live stock should be transported from Hale, Missouri, to the unloading chutes of the Kansas City Stock Yards Company, which, as before stated, were situated in the State of Kansas.

The mere fact that after the stock had been transported into the State of Kansas and there unloaded and was then driven from there, on foot, back across the State line, into the State of Missouri, had no effect whatever upon the character of the shipments made by the railroad company.

After the unloading of the stock, the company had nothing whatever to do with it. The act of driving the cattle and hogs back into the State of Missouri was an independent matter over which it had no control and it could not have compelled the shipper to have so driven them back nor to have driven them further into the State of Kansas or elsewhere. As previously stated, when the stock had been unloaded from the cars of the company into the Kansas City Stock Yards of Kansas City, its connection with the shipment completely ended, and it had no more control over the stock or its movements, on foot, car, boat or barge, than did the "Man in the Moon."

The views I have here expressed are in full accord with the rulings of the Supreme Court of the United States—the final arbiter of all such questions, in the cases before mentioned.

This being true, the sequence must be that the acts of Congress of the United States and not the statutes of the State of Missouri must govern in this case; that is, the shipments here mentioned are interstate and not intrastate shipments.

The cases referred to are the following: Louisiana R. R. Commission v. Texas and Pacific Ry. Co., 229 U. S. l. c. 340; Chicago, Milwaukee & St. Paul Ry. Co. v. Iowa, 233 U. S. l. c. 343; Baer Bros. v. Denver & Rio Grande Ry. Co., 233 U. S. l. c. 490; Southern Pac. Terminal Co. v. Interstate Commerce Comm., 219 U. S. 498; Ohio Railroad Comm. v. Worthington, 225 U. S. l. c. 107; Texas Ry. Co. v. Sabine Tram. Co., 227 U. S. 119.

These cases have so fully, carefully and completely considered this question from so many different viewpoints that there is nothing new that can be said upon the subject. Those who are curious enough or who are sufficiently interested in the questions here presented, will find them learnedly discussed in those cases, in which most every phase there-

of has been definitely settled. But in the light of these cases, there is no use of burdening this opinion with a review of them.

Believing the rulings announced in those cases are controlling in this, we are of the opinion that the judgment should be reversed and the cause remanded, with directions to the circuit court to dismiss the suit. It is so ordered.

All concur, except *Graves, J.,* who dissents in a separate opinion, and *Brown, J.,* who concurs in opinion of *Graves, J.*

GRAVES, J. (dissenting).—I shall not go into all the reasons for this dissent. One proposition will suffice. It is undisputed in this record that a number of the written contracts read from "Hale, Mo., to Kansas City, Mo." The defendant having thus contracted cannot gainsay the terms of its contract in order to make an interstate shipment out of a contracted intrastate shipment. The contract estops defendant from making such claim.

For this reason the majority opinion is in error, if not for others. I therefore dissent. *Brown, J.,* concurs with me.