### J. T. WATSON v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 19 November, 1919.)

**Telegraphs—Commerce—Interstate—Relays—Beyond the State—Bad Faith —Mental Anguish—State Decisions.**

> Where a telegraph company has one or several means of sending entirely within the State a message received at one point therein to another within its boundaries, the relaying of the message beyond the borders affords evidence that it was done in bad faith to change the intrastate character of the message, and disregard our own decisions as to the recovery of mental anguish alone, and a verdict of the jury that its transmission thus was in bad faith, and awarding damages, will be sustained.

WALKER, J., concurring; BROWN, J., dissenting, and ALLEN, J., concurring in the dissenting opinion.

APPEAL by defendant from *Lane, J.,* at February Term, 1919, of GUILFORD.

This action is to recover mental anguish for delay in delivery of the following message:

RED SPRINGS, N. C., 5:50 p. m., 31 October, 1917.

J. T. WATSON, Greensboro, N. C.

Go to Charlie McKnight at Vanstory Clothing Company. Get money. Come to Buie *via* Raleigh, mother dead.                    N. A. WATSON.

This message, filed at Red Springs, 5:50 p. m., 31 October, 1917, was received at Greensboro .5:57 p. m. on the same day. The mother of the plaintiff had died on the same day at 2:30 p. m. The telegram was not delivered till about noon, 1 November, in consequence of which the plaintiff was unable to get to Red Springs until the morning of 2 November.

Verdict and judgment in favor of plaintiff. Appeal by defendant.

*Charles A. Hines and C. R. Wharton for plaintiff.*
*King & Kimball for defendant.*

CLARK, C. J. The chief, if not the sole, question presented by the briefs, both of the plaintiff and defendant, and on which this case was tried, is whether this was an interstate message. It was sent from Red Springs, N. C., to Greensboro, N. C., *via* Bennettsville, S. C. It was in evidence that there were at least four shorter lines of telegraph owned by defendant from Red Springs to Greensboro, lying wholly in the State, and over which this message might have been sent, to wit, from Red Springs to Fayetteville, and thence to Greensboro; also from Red Springs to Maxton, and from Maxton to Hamlet, and thence either *via* Raleigh or *via* Charlotte to Greensboro; and also from Red Springs to Selma, thence to Greensboro. The cross-examination of the defendant's witness showed that telegrams from Red Springs to every point in North Carolina (except to two or three stations between Maxton and Fayetteville) are sent by it over a wire that runs through South Carolina, or are sent to Richmond, Va., and thence back into this State. The plaintiff contended that these facts furnished evidence from which the jury could find that this method was adopted for the purpose of evading liability under the laws of this State, and that such course of business was not established in good faith, and the jury so found.

Exception 5 presents the following question: "1. Did his Honor err in charging the jury as follows: 'So, if the jury find from the evidence that even if this message came through the State of South Carolina, if it was not sent that way in good faith, over the usual necessary way in the transaction of its business, then you will not consider it an interstate message.'"

Exception 11: "Was there sufficient evidence to go to the jury that the defendant company acted in bad faith in routing the message out of the State as it did?"

The charge of the court was in line with the decision of this Court in *Bateman v. Tel. Co.,* 174 N. C., 97. The fact that by the peculiar methods adopted by the defendant, all messages from Red Springs to other points in this State (except to two or three points between Maxton

and Fayetteville) are sent out of the State to some point in South Carolina, or to Richmond, Va., and thence back into this State, was certainly sufficient evidence to be submitted to the jury upon the question of good faith.

So generally has this method been adopted by the defendant that the Legislature of 1919, ch. 175, passed "An act to prohibit telegraph companies from converting intrastate messages into interstate messages," and provided therein that "Proof of the sending of any message from one point in this State to another point in this State shall be *prima facie* evidence that it is an intrastate message."

There are a few instances where, by reason of the configuration of the State boundary, or the location of the railroad or telegraph line, the transportation of freight and passengers, or the transmission of a telegram between two points in the same State, by the usual and most direct route, is through another State. In such case it is an *interstate* transaction. But the courts take judicial notice of State lines and the location of points within the State. Reference to the diagram shows that as a matter of law, as well as of fact, the transportation of freight or passengers or the transmission of telegrams between Red Springs and Greensboro is purely an *intrastate* matter.

If by the device of sending this message to Bennettsville, S. C., or to Richmond, Va., and thence to Greensboro, this could be made an interstate message it would follow that the State regulation by which 25 cents is the limit for a message of 10 words between two points in this State is entirely abrogated, and the telegraph company, by its methods of transacting business with a view of evading our law as to the measure of damages, has also annulled the right of the State to regulate telegraphic charges, and all other supervision of any kind whatever by the State over the telegraph company which does business in this State, under authority of our laws, and which is protected in its property, and as to the persons of its employees at the expense of the taxpayers of North Carolina.

The jury have found, upon adequate testimony, that this method was used to evade the State laws. But, independently of that, under the authority of *Speight v. Tel. Co., ante,* 146, the Court might well have held that, according to the United States Constitution and geography, as a matter of law, the transmission of a telegram between Red Springs and Greensboro was an *intrastate* transaction.

It being in evidence from the defendant's witnesses that there are at least four other shorter routes over which the defendant could have sent this message from Red Springs to Greensboro without sending it to a point in South Carolina, or to Richmond, Va., and thence back into the State, the judge might have instructed the jury, under the authority of *Speight v. Tel. Co., supra,* that irrespective of the question of good faith, this being a message between two points in this State, was an intrastate message, and governed by our laws, both as to charges for transmission and the measure of damages, and that if the defendant, though in good faith, but merely for its own convenience, or according to its peculiar notions of doing business, has seen fit to send it (out of the direct and shortest route) to points out of the State, and thence back into the State, it was none the less *intrastate* commerce.

Unless the judge, upon the facts of this case, could instruct the jury as a matter of law that this was intrastate commerce, then the State has lost control of the rates and regulations of all interstate commerce, for freight could be thus shipped from Red Springs to Richmond, Va., and thence back to Greensboro, and rates charged accordingly, and free from any other regulations by the State. This would be true as to all other intrastate commerce.

However, both in this case and the *Speight case, supra,* the jury found that it was an intrastate message, as a matter of fact.

No error.

WALKER, J., concurs in result: He will add, though that the case of *Bateman v. Tel. Co.,* 174 N. C., 97, is not, in his opinion, an authority in favor of the decision, or that in *Speight v. Tel. Co.,* at this term.

In the *Bateman case,* the message could not be sent directly from Durants' Neck, N. C., to Plymouth, N. C., because there was, at that time, no line between those points, and, therefore, it had to be transmitted by way of Norfolk, Va. The judge charged the jury in that case as follows: "If the jury believe the evidence, and find therefrom that the message was transmitted in the usual, customary, and *necessary* route from Hertford, N. C., to Norfolk, Va., and relayed and transmitted from Norfolk, Va., to Plymouth, N. C., then the message would be an interstate message, and as such, interstate commerce, and the liability of the defendant is such only as is fixed and determined by the Federal law applicable thereto; . . . and mental anguish alone in such a case as this is not recognized by the Federal law as an element of damage for which a recovery can be had, . . . therefore, upon such finding, you will answer the third issue 'Nothing.' " With reference to this instruction, we said: "This charge, read in connection with the verdict, or the answer to the third issue, excludes the idea of bad faith on the part of the defendant, and goes further, for it establishes the fact that instead of there being any attempt to evade the law, the route selected by the defendant was 'the usual, customary, and *necessary* one.' "

There was no controversy there as to there not being a line of communication between the initial and the terminal points. It was conceded that there was not, and the only question was whether the necessity of sending out of the State to Norfolk, Va., and from there to Plymouth, N. C., would be interstate commerce, and we held that it would have that effect in law.

In the present case, there is a telegraph line connecting Red Springs, N. C., and Greensboro, N. C., and the jury has found that the defendant sent the message beyond the State, and by a circuitous and roundabout way to Greensboro, N. C., not in good faith, but with the fraudulent purpose of evading the operation of our State laws.

I concur in the result of the decision, but not in all of the reasoning by which it was reached.

BROWN, J., dissenting: I regret to differ with my brethren in the disposition of this case, for I realize that there are some cases of this character where telegraph companies should be held to liability for mental anguish under our State law. If this were an open question, I would unhesitatingly agree with my brethren. But investigation has convinced me that where the telegraph company has the choice of two methods of transmitting a telegram, one wholly within the State, and the other through a relay station outside the State, and the company chooses to transmit it outside the State, the transmission outside the State constitutes interstate commerce.

It has been settled by the Supreme Court of the United States, in *Hankey v. R. R.*, 187 U. S., 617, that where two points are in the same State, yet if in the transmission by a carrier any part of the route is in another State, it is interstate commerce. To bring the transportation within the control of the State as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the State. This subject is discussed by *Mr. Justice Walker* in *Bateman v. Tel. Co.*, 174 N. C., 97. I think it is manifest from the language of the act of Congress of 18 June, 1910, that a telegram sent from a point in this State through another State and back into this State is interstate commerce, and comes within the purview of that act.

Section 1 of that act reads as follows: "The provisions of this act shall apply to . . . telegraph, telephone, and cable companies" (whether wire or wireless) engaged in sending messages from one State, territory, or district of the United States to any other State, territory, or district of the United States, or to any foreign country, who shall be considered and held to be common carriers within the meaning . . . of this act: . . . *Provided, however,* that the provisions of this act shall not apply to the transmission of messages by telephone, telegraph, or cable wholly within one State, and not transmitted to or from a foreign country from or to any State or territory as aforesaid."

The only exception to the provision of that act is to the transmission of messages wholly within one State.

It is plain to me that under the act of Congress the manner of the transmission of the message and route it takes controls the question as to whether the message comes within the purview of the Federal statute. This seems to be the view of the Supreme Court of Kentucky in the case of *Telegraph Co. v. Lee*, 192 S. W., 70, in which the Court says: "But the statute in the exempting clause speaks of messages transmitted wholly within one State." It is also the view of the Supreme Court of South Carolina, in *Berg v. Tel. Co.*, 96 S. E., 248, in which the Court held that a telegram transmitted through a relay point outside the State to another point in the same State was an interstate message, and governed by the Federal law pertaining thereto, and in this connection the Supreme Court of South Carolina, referring to the proviso in the act of Congress above quoted, says:

"The words in the proviso to section 1 of the Interstate Commerce Act, 'that the provisions of this act shall not apply to the transportation of passengers or property . . . wholly within one State,' etc., and the words, 'nor shall they apply to the transmission of messages by telegraph, telephone, or cable, wholly within one State,' etc., were intended to declare that the transportation or transmission which was only partly

within a State should be subject to the provisions of the Interstate Commerce Act, for the reason that only such portion of the instrumentalities used in the transportation or transmission, located in a particular State, can be subjected to the legislation of that State, but not of any other State. No other reasonable construction can be placed on that section."

See, also, *Davis v. Tel. Co.,* Missouri, 202; S. W., 292; also, *Tel. Co. v. Mahone* (Va.), 91 S. E., 157. In this case the message was sent from Norfolk, Va., to Tye River, in the same State, but was relayed through the city of Washington. It developed in the evidence that it was possible to send the message wholly within the State of Virginia, and it is apparent from the opinion of the Court that counsel for the plaintiff relied upon the same course of reasoning upon which is based the opinion of this Court. The Supreme Court of Virginia, however, held that the Court had nothing to do with the motives, but only with facts, *i. e.,* only with the question as to whether the message was actually transmitted through another State. The Supreme Court of Virginia said:

"The Supreme Court of the United States, however, has made it plain that in determining such questions they will only consider the facts and not inquire into motives. A local dealer in intoxicating liquors, who lived in the State of Kansas, and also maintained an office and warehouse in a small village, Stillings, on the Missouri side of the Missouri River, which was connected by a bridge with Leavenworth, Kan., transacted his business thus: After receiving his orders from his Kansas customers, he would make deliveries from his warehouse on the Missouri side of the Missouri River in his own horse-drawn wagons, either directly or by hauling the liquor to the Leavenworth railway depot for transportation to other Kansas points. The State of Kansas sought to enjoin him from carrying on this business in violation of the laws of Kansas. He claimed that his business was interstate commerce, and the Supreme Court of the United States sustained his contention, saying: 'The Supreme Court of the State gave much weight to the dealer's past conduct and animating purpose, and relied upon the language quoted from *Austin v. Tennessee,* 179 U. S., 343; 21 Sup. Co., 132; 45 L. Ed., 224, and *Cook v. Marshall County,* 196 U. S., 261; 25 Syp. Ct., 233; 49 L. Ed., 471. Considered in the light of our former decisions, if the business carried on by plaintiff in error after removal of his office to Stillings, had been conducted by a dealer who had always operated from that place, we think there could be no serious doubt of its interstate character. And we cannot conclude that a legal domicile in Kansas, coupled with a reprehensible past and a purpose to avoid the consequences of the statutes of the State, suffice to change the nature of the transactions.' *Kirmeyer v. State of Kansas,* 236 U. S., 568; 36 Sup. Ct., 419; 59 L. Ed., 721."

I am driven to the conclusion that where a message is actually transmitted through another State, although the point of origin and the point of destination are both within the same State, such message constitutes interstate commerce, irrespective of the motive which prompted the company in sending the message outside the State. I think it plainly deducible from the language of the Supreme Court of the United States, in *Kirmeyer v. State of Kansas,* 236 U. S., 568, quoted and commented on by the Supreme Court of Virginia in *Tel. Co. v. Mahone, supra.* See, also, *Tel. Co. v. Boles* (Va.), 98 S. E., 645, decided 13 March, 1919. In that case the Supreme Court of Virginia, referring to the *Mahone case,* says:

"It was contended in the *Mahone case,* as here, that, inasmuch as the message could have been sent over an intrastate route, the company could not impress upon·it an interstate character by a different routing. But this Court held, upon authority, that the interstate character of the message must be tested by the actual facts as to its transmission, and not by the motives of the company; and, further, as a necessary corollary from the decision in the *Bolling case,* that the adoption by the company of an interstate route of transmission relegated the transaction to the domain of Federal control."

See, also, the opinion of the Supreme Court of Missouri in the case of *Taylor v. Tel. Co.,* 204 S. W., 818.

Under these authorities and others which can be cited, I am convinced that where it appears that the message was transmitted over wires running through more than one State, the fact itself is controlling and the Court cannot go into the questions of the motives of the company, although it may appear that there were routes wholly within the State over which the message might have been sent. There is no statute in North Carolina which makes it compulsory upon telegraph companies doing business within this State to transmit messages to points within the State over wires wholly within the State, and until such statute is enacted, I see no way by which telegraph companies can be restricted in the manner in which they shall transmit the messages of their customers. It must be admitted that the only duty the telegraph company owes to the customer is to transmit his message accurately and with celerity. If it can perform this duty as well by using one wire as another, I don't know any way by which its choice can be interfered with. I am not at all alarmed at the suggestion that the telegraph companies, by routing intrastate messages out of the State, can avoid the rate fixed by the State for such business. The State has the undenied right to fix the rate for transmitting messages between points in the State, provided the rate is reasonable and not confiscatory. This has been acquiesced in by the telegraph companies for many years, and it is too

late now to question the power. By routing the message on wires running into an adjoining State and back into this State, the company cannot evade the State law fixing rates as long as it continues to do business in the State. The difference is this: There is a law fixing rates within the State on intrastate messages, but there is no statute requiring such message to be transmitted over wires wholly within the State. Therefore, the company can transmit them over any lines it sees fit if it discharges fully its duty to the patrons.

I admit that the decision of the Court in this case comes within the authority of *Speight v. Tel. Co.,* at this term. I was not present when the *Speight case* was decided, and take this opportunity to express my views with the purpose hereafter to cheerfully acquiesce in the judgment of my brethren.

ALLEN, J., concurs in this opinion.