WALKER, J., concurring; Brown, J., dissenting, and ALLEN, J., concurring in the dissenting opinion.
This action is to recover mental anguish for delay in delivery of the following message:
RED SPRINGS, N.C. 5:50 p.m., 31 October, 1917. J. T. WATSON, Greensboro, N.C.
Go to Charlie McKnight at Vanstory Clothing Company. Get money, Come to Buie via Raleigh, mother dead. N. A. WATSON.
This message, filed at Red Springs, 5:50 p.m., 31 October, 1917, was received at Greensboro 5:57 p.m. on the (472) same day. The mother of the plaintiff had died on the same day at 2:30 p.m. The telegram was not delivered till about noon, 1 November, in consequence of which the plaintiff was unable to get to Red Springs until the morning of 2 November.
Verdict and judgment in favor of plaintiff. Appeal by defendant.
The chief, if not the sole, question presented by the briefs, both of the plaintiff and defendant, and on which this case was tried, is whether this was an interstate message. It was sent from Red Springs, N.C. to Greensboro, N.C. via Bennettsville, S.C. It was in evidence that there were at least four shorter lines of telegraph owned by defendant from Red Springs to Greensboro, lying wholly in the State, and over which this message might have been sent, to wit, from Red Springs to Fayetteville, and thence to Greensboro; also from Red Springs to Maxton, and from Maxton to Hamlet, and thence either via Raleigh or via Charlotte to Greensboro; and also from Red Springs to Selma, thence to Greensboro. The cross-examination of the defendant's witness showed that telegrams from Red Springs to every point in North Carolina (except to two or three stations between Maxton and Fayetteville) are *Page 506 
sent by it over a wire that runs through South Carolina, or are sent to Richmond, Va., and thence back into this State. The plaintiff contended that these facts furnished evidence from which the jury could find that this method was adopted for the purpose of evading liability under the laws of this State, and the jury course of business was not established in good faith, and the jury so found.
Exception 5 presents the following question: "1. Did his Honor err in charging the jury as follows: `So, if the jury find from the evidence that even if this message came through the State of South Carolina, if it was not sent that way in good faith, over the usual necessary way in the transaction of its business, then you will not consider it an interstate message.'"
Exception 11: "Was there sufficient evidence to go to the jury that the defendant company acted in bad faith in routing the message out of the State as it did?"
The charge of the court was in line with the decision of this Court in Bateman v. Tel. Co., 174 N.C. 97. The fact that by the peculiar methods adopted by the defendant, all messages from Red Springs to other points in this State (except to two or three points between Maxton and Fayetteville) are sent out of the State to some (473) point in South Carolina, or to Richmond, Va., and thence back into this State, was certainly sufficient evidence to be submitted to the jury upon the question of good faith.
So generally has this method been adopted by the defendant that the Legislature of 1919, ch. 175, passed "An act to prohibit telegraph companies from converting intrastate messages into interstate messages," and provided therein that "Proof of the sending of any message from one point in this State to another point in this State shall be prima facie
evidence that it is an intrastate message."
There are a few instances where, by reason of the configuration of the State boundary, or the location of the railroad or telegraph line, the transportation of freight and passengers, or the transmission of a telegram between two points in the same State, by the usual and most direct route, is through another State. In such case it is an interstate transaction. But the courts take judicial notice of State lines and the location of points within the State. Reference to the diagram shows that as a matter of law, as well as of fact, the transportation of freight or passengers or the transmission of telegrams between Red Springs and Greensboro is purely anintrastate matter.
If by the device of sending this message to Bennettsville, (474) S.C., or to Richmond, Va., and thence to Greensboro, this could be made an interstate message it would follow *Page 507 
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 178 N.C. 507.]
that the State regulation by which 25 cents is the limit for a message of 10 words between two points in this State is entirely abrogated, and the telegraph company, by its methods of transacting business with a view of evading our law as to the measure of damages, has also annulled the right of the State to regulate telegraphic charges, and all other supervision of any kind whatever by the State over the telegraph company which does business in this State, under authority of our laws, and which is protected in its property, and as to the persons of its employees at the expense of the taxpayers of North Carolina.
The jury have found, upon adequate testimony, that this method was used to evade the State laws. But, independently of that, under the authority ofSpeight v. Tel. Co., ante, 146, the Court might well have held that, according to the United States Constitution and geography, as a matter of law, the transmission of a telegram between Red Springs and Greensboro was an intrastate transaction.
It being in evidence from the defendant's witnesses that there are at least four other shorter routes over which the defendant could have sent this message from Red Springs to Greensboro without *Page 508 
sending it to a point in South Carolina, or to Richmond, Va., and thence back into the State, the judge might have instructed the jury, under the authority of Speight v. Tel. Co., supra, that irrespective of the question of good faith, this being a message between two points in this State, was an interstate message, and governed by our laws, both as to charges for transmission and the measure of damages, and that if the defendant, though in good faith, but merely for its own convenience, or according to its peculiar notions of doing business, has seen fit to send it (out of the direct and shortest route) to points out of the State, and thence back into the State, it was none the less intrastate commerce.
Unless the judge, upon the facts of this case, could instruct the jury as a matter of law that this was intrastate commerce, then the State has lost control of the rates and regulations of all interstate commerce, for freight could be thus shipped from Red Springs to Richmond, Va., and thence back to Greensboro, and rates charged accordingly, and free from any other regulations by the State. This would be true as to all other intrastate commerce.
However, both in this case and the Speight case, supra, the jury found that it was an intrastate message, as a matter of fact.
No error.