## ROUNDTREE v. TERRELL et al.

### No. 3773–1029 Eq.

District Court, N. D. Texas, Dallas Division.

Feb. 17, 1938.

298

Leffingwell, Currie & Davis, of Dallas, Tex., for complainant.

Albert G. Walker, Asst. Atty. Gen., and Curtis E. Hill, of Dallas, Tex., for respondents.

ATWELL, District Judge.

The complainant is doing business under the name of the Ozark Motor Lines. He operates as a common carrier, by motor, between Fort Worth, Tex., and Little Rock, Ark., via Dallas, Greenville, Paris, and Texarkana. He claims that he handles only interstate commerce. Prior to the passage of the Federal Motor Carrier Act, 49 U.S.C.A. § 301 et seq., on June 13, 1934, the Railroad Commission of Texas issued him an interstate certificate authorizing him to transport interstate commerce, over Texas highways between Fort Worth and Texarkana. That he has operated since 1934, and has filed with the Interstate Commerce Commission an application for a certificate as a common carrier of commodities generally moving in interstate commerce between Fort Worth, Tex., and Little Rock, Ark., over the highways indicated, and has complied with the provisions of the Federal Motor Carrier Act, and that the Interstate Commerce Commission has issued to him identification plates which he displays upon each unit which he operates. That he is obliged by the Federal Transportation Act, 41 Stat. 456, to transport any and all commodities moving in interstate commerce for transportation to points directly or indirectly served by him. That Texarkana, Arkansas-Texas, is an intermediate point which he holds himself out to serve in so far as interstate commerce is concerned. That it is located on the state boundary line between Arkansas and Texas; part of the city being in Arkansas and part in Texas. That his warehouse is located in Arkansas about four blocks from the state boundary line, to which all shipments for Texarkana are transported and unloaded. That he performs, in accordance with his filed tariff, free pick-up and delivery service within the municipal limits. That the local pick-up and delivery truck is not a line truck, but is a local truck bearing an Arkansas license. That it is a purely local service operated within the city limits of Texarkana.

That on September 10, 1937, at Dallas he was tendered a shipment of merchandise consigned to the Texarkana Candy Company, Texarkana, Ark. That he accepted the shipment and transported it from Dallas to his warehouse in Texarkana, Ark. That later his local delivery truck transported the shipment from the warehouse across the state line into Texas, and delivered it to the consignee. That it is impossible for him to carry merchandise from Dallas to Texarkana, Arkansas-Texas, without transporting the same into Arkansas, because his line trucks never make deliveries of pick-up merchandise, save from complainant's warehouse.

That the Railroad Commission of Texas, respondents, has power and authority to make arrests for alleged violations of the State Motor Carrier Act, Vernon's Ann.P. C. Tex. art. 1690b, that notwithstanding the fact that it has no jurisdiction over the character of commerce that he is engaged in transporting, that it has authorized and directed its inspector, J. T. Harman, to threaten complainant with arrest for the handling of the foregoing mentioned shipment, and is further threatening to arrest complainant on each and every occasion he handles a similar shipment, and has lodged a criminal complaint with the justice of peace in Greenville, Tex., for the issuance of a warrant against complainant.

He pleads inadequacy of the law to relieve him, and seeks the usual restraints.

A motion to dismiss having been overruled, the respondents answered that the shipment set out in the complaint was an intrastate transaction, and that he had no authority to transport it, and that his method of handling the same is a scheme inaugurated by him to evade the enforcement of the Motor Carrier Laws of Texas.

Preliminary restraint and interlocutory injunction were waived by all parties, without prejudice, and the case came on for final hearing.

Careful attention to the testimony results in finding that the complainant has been operating his line of motortrucks from Fort Worth via Dallas, Greenville, Paris, Texarkana, into Little Rock, Ark., along the highways mentioned in his bill, for three or four years. Formerly, he had an arrangement with one Manning, at Texarkana, Tex., who ran a filling station, at which the complainant's trucks were re-

fueled and oiled, to hold, without compensation, such few bundles of freight as he might have for that vicinity, for transportation by other lines, or delivery in Texarkana.

About January 1, 1936, he employed Robert Ellis to go to Texarkana to establish a warehouse on the Arkansas side. That was done about January 19, 1936. The warehouse is about 18 by 18 feet, and is two and a half or three blocks from the state line, and on the Arkansas side. The state line runs in the center of the street, and the Federal building is partly in Arkansas and partly in Texas.

Freight which is picked up by his delivery service in Dallas for transmission to Texarkana, whether on the Arkansas or the Texas side, is transported directly to the warehouse on the Arkansas side. It is unloaded there in the nighttime, and the next morning the local delivery truck makes delivery of it within the municipal limits to whichever side of the city it may be consigned.

Texarkana has about 40,000 people; about half being on either side of the line. The Arkansas side seems to have more commercial activity, and rents are somewhat cheaper; both of which conditions entered into the establishment of complainant's warehouse.

He has four or five trucks operating on the line, and other trucks, as already indicated, in the pick-up and delivery service. The line trucks reach Texarkana about 4 or 5 o'clock in the morning, all places of business are closed, such freight as is consigned to that point is unloaded and locked in the warehouse, the line truck then proceeds on to Little Rock, arriving there somewhere between 9 and 12 o'clock, dependent upon the business that it transacts.

The freight which originates in Texas and is subsequently delivered to Texarkana, Tex., must be and is transported over the line into Arkansas, and comes to rest in the warehouse in that state.

Upon those facts I find that the complainant is engaged in interstate commerce.

The freight passed from Texas into Arkansas. When it does that, it is interstate commerce. The Federal Motor Carrier Act, 49 U.S.C.A. § 303(a) (10), defines interstate commerce as that commerce which passes from state to state, or which passes from a place in one state to another place in the same state, through another state. It is commerce that is not entirely within the limits of a single state. That the carrier has seen fit to establish his terminus in Texarkana, Ark., instead of Texarkana, Tex., may not be criticised as an illegal subterfuge, if it is an actual fact. There is nothing wrong, nothing illegal, about putting a depot in Arkansas instead of in Texas. If by so doing the carrier escapes Texas taxes or Texas supervision, he is merely exercising business acumen. He pays for the service which he renders his customers. If he carries freight from Dallas to his depot in Arkansas, then unloads it, under a good-faith plan, and subsequently, when daylight comes, delivers it to his customers in Texarkana, Tex., he is doing what he has a right to do. The terminii are in Texas and Arkansas. That sort of transportation is amenable solely to the national government. Any attempt to hamper it must be viewed as illegal, unconstitutional, and void.

That he at one time stopped his line trucks from Dallas, which were eastbound, at Manning's place in Texarkana, Tex., is no reason why his present case is to be ruled by that fact, because he abandoned that method more than two years ago. Nor is he to be condemned because his warehouse is not larger. If he finds his warehouse large enough for his business, that is his affair. Its size is inconsequential, so far as the law is concerned. Most of our big business was at one time our small business, and small business is entitled to the same respect and the same protection that it has when it has grown to other proportions.

The confusion that arose, at an early date, over the attempt to definitely diagram interstate commerce, does not exist to-day. The early case of Lehigh Valley R. Co. v. Pennsylvania, 145 U.S. 192, 12 S.Ct. 806, 36 L.Ed. 672, which was distinguished in Hanley v. Kansas City Southern Ry. Co., 187 U.S. 617, 618, 23 S.Ct. 214, 47 L.Ed. 333, was a tax case, and had some features to it that need not be reviewed. There it was held that transportation from one point to another in the same state, or incidentally passing through territory of an adjoining state, is not interstate commerce. See, also, Campbell v. Chicago, M. & St. P. Ry. Co., 86 Iowa 587, 53 N.W. 351, 17 L.R.A. 443; Dillon v. Erie R. Co., 19 Misc.

116, 43 N.Y.S. 320; Ft. Worth & Denver City Ry. Co. v. Whitehead, 6 Tex.Civ.App. 595, 26 S.W. 172.

Many other cases speak the judgment that a shipment of goods which traverses another state, though the points of origin and of destination are in the same state, is interstate commerce, as the statute itself now provides, and seems to be the prevalent rule.

Wichita Falls & Western Ry. Co. of Texas v. Asher, Tex.Civ.App., 171 S.W. 1114; Missouri Pacific R. Co. v. Stroud, 267 U.S. 404, 45 S.Ct. 243, 69 L.Ed. 683; Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30 S.Ct. 190, 54 L.Ed. 355. Compare Interstate Busses Corp. v. Holyoke St. R. Co., 273 U.S. 45, 50, 47 S.Ct. 298, 299, 71 L.Ed. 530.

True it is that commerce is undoubtedly traffic plus intercourse, and the carriage of freight and passengers between two points in one state, during which route there is passage over the soil of another state, will not render that business foreign, which is domestic. Interstate Tobacco Co. v. Grosjean, D.C., 2 F.Supp. 220; Inter-City Coach Co. v. Atwood et al., D.C., 21 F.2d 83; Coe v. Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715. See, also, Lord v. Goodall, N. & P. Steamship Co., 102 U.S. 541, 26 L.Ed. 224.

But, again, clarity must come from recognizing the difference of regulation sought in each case. For instance, in Western Union Telegraph Company v. Speight, 254 U.S. 17, 41 S.Ct. 11, 65 L.Ed. 104, it was definitely shown that a telegram originating in a state for transmission to another point in that state, but which actually traversed a second state, following the practice and employing the established system of wires, was interstate commerce.

A case somewhat different, though involving the passage of a woman from a point in one state to another point in the same state, but incidentally passing through another state, was not interstate commerce, is U. S. v. Wilson, D.C., 266 F. 712. Then the pendulum swings back in Michael v. U. S., 7 Cir., 7 F.2d 865, where it was held that freight from Illinois into Indiana, and then back to Illinois, was interstate commerce. See, also, Bowles v. Quincy, O. & K. C. R. Co., Mo.App., 187 S.W. 131; U. S. v. Yohn, D.C., 275 F. 232; Yohn v. U. S., 2 Cir., 280 F. 511; Heineman Bros.

v. Erie R. Co., Sup., 172 N.Y.S. 111; Crescent Brewing Co. v. Oregon Short Line R. Co., 24 Idaho 106, 132 P. 975; State v. Frazee, 83 W.Va. 99, 97 S.E. 604; Illinois Central R. Co. v. Rogers & Hurdle, 116 Miss. 99, 76 So. 686, 687; Watson v. Western Union Tel. Co., 178 N.C. 471, 101 S.E. 81; Deardorff v. Chicago, B. & Q. Ry. Co., 263 Mo. 65, 172 S.W. 333; Pecos & N. T. Ry. Co. v. Stinson, Tex.Civ.App., 181 S.W. 526. Compare Superior Oil Co. v. State of Mississippi, 280 U.S. 390, 50 S.Ct. 169, 74 L.Ed. 504.

It would not seem appropriate to compel the complainant to deliver freight in Texarkana, Tex., as he passes through in the nighttime, rather than following his legally chosen method of unloading it at his warehouse and then delivering it to the consignee, by another carrier, during business hours. He should not be subject to arrest, nor continued threatened prosecution by respondents, for carrying on his business, who have no authority over that business.

Decree may go for the complainant within the exact lines of his bill, as related to the September 10, 1937, shipment.