# CHARLESTON.

STATE v. CHARLES FRAZEE.

Submitted October 15, 1918.    Decided November 15, 1918.

1. COMMERCE—*"Interstate Commerce"—Power of State*.

   Transportation of persons or property by a common carrier between points in the same state over a route part of which is in another state constitutes interstate commerce, and as such the legislature of this state cannot impose an undue burden thereon, unless sanctioned by a valid act of Congress.    (p. 100).

2. SAME—*Interstate Commerce—Webb-Kenyon Act*.

   The federal law known as the Webb-Kenyon Act (8 U. S. Comp. Stat. § 8739) does sanction the imposition of such burdens upon the interstate transportation of intoxicating liquor intended "to be received, possessed, sold, or in any manner used" in violation of the laws of this state.    (p. 100).

3. SAME—*Interstate Commerce—Enforcement of State Prohibition Law*.

   The movement of such liquors in interstate commerce for purposes prohibited by the laws of this state having expressly been divested of its immunity as such by the Webb-Kenyon Act, the enforcement of the state's prohibition laws does not conflict with the commerce clause of the federal Constitution.    (p. 100).

4. INTOXICATING LIQUORS—*Transportation—Construction of Statute*.

   The primary purpose of sec. 31, ch. 32A, Barnes' Code 1918, is to prevent the transportation of liquor from a point without to a point within the state, or between two points within the state, to be possessed or used within the state in violation of the law thereof.    (p. 102).

5. SAME—*Transportation—Construction of Statute—Offense.*

   No violation of sec. 31, ch 32A, Code, has been committed where an interstate passenger in good faith carries liquor on a train which passes through this state, but does not intend to sell or use, and does not sell or use, the liquor while within its borders, and does not remove it from the train so as to constitute a commingling with the general property of the state.    (p. 102).

Error to Circuit Court, Mineral County.

Charles Frazee was convicted of a violation of the state prohibition law, and he brings error.

*Reversed, and remanded.*

*Arthur Arnold* and *W. C. Grimes,* for plaintiff in error.
*E. T. England,* Attorney General, and *Chas. Ritchie,* Assistant Attorney General, for the State.

LYNCH, JUDGE:

In traveling as a passenger on a Baltimore & Ohio Railroad train from Cumberland, Maryland, to Oakland in the same state, defendant passed through part of the state of West Virginia. Between Cumberland and Keyser, West Virginia, the latter being the first station stop after Cumberland, the conductor in charge of the train was unable to obtain from defendant any information as to his destination or procure payment of his fare. Because defendant was intoxicated at the time, the conductor upon reaching Keyser caused a policeman to remove him from the train, and with him the suit case pointed out as belonging to him, which when opened was found to contain six quarts and one pint of liquor. Defendant was tried, convicted and sentenced for violating the state prohibition law, sec. 31, ch. 32A, Barnes' Code 1918.

One of the chief defenses relied upon at the trial and here was that defendant being an interstate passenger was not subject to that part of our prohibitory law limiting the amount of liquor that any person can bring into the state within a certain designated period. It is true that the mere fact that the origin and destination of the journey are in the same state does not necessarily govern its character and constitute it an intrastate journey. The crossing of state lines subjects the passenger to the protection of, and duties imposed by, the laws of another state. Hence the rule is almost unanimous that transportation or transmission between points in the same state over a route part of which is in another state or territory constitutes interstate commerce. *Hanley* v. *Kansas City So. Ry. Co.,* 187 U. S. 617; *Wilmington Transportation Co.* v. *California R. R. Com.,* 236 U. S. 151. See also notes and cases cited in L. R. A. 1918A, 805, and 28 L. R. A. (N. S.) 985.

Being thus within the scope of the commerce clause of the federal Constitution, the state may not legislate with re-

spect thereof in such manner as to impose an undue burden
upon commerce between states or interfere with the power of
Congress to regulate it, unless sanctioned by a valid federal
law. The Webb-Kenyon Act, however, enacted by Congress
March 1, 1913 (8 U. S. Comp. Stat. § 8739), and sustained by
the United States Supreme Court in the case of *Clark Distill-
ing Co.* v. *Western Maryland Ry. Co.*, 242 U. S. 311, met
this situation in every respect. Omitting words irrelevant
to the subject now under consideration, the title and text of
the act are as follows:

"An Act Divesting intoxicating liquors of their interstate
character in certain cases.

" * * * That the shipment or transportation, in any man-
ner or by any means whatsoever, of any spiritous, vinous,
malted, fermented, or other intoxicating liquor of any kind,
from any State, Territory, or District of the United States,
* * * into any other State, Territory, or District of the United
States, * * * which said spiritous, vinous, malted, fermented,
or other intoxicating liquor is intended, by any person inter-
ested therein, to be received, possessed, sold, or in any man-
ner used, either in the original package or otherwise, in vio-
lation of the law of such State, Territory, or District of the
United States, * * * is hereby prohibited."

Thus is withdrawn from the shipment or transportation of
intoxicating liquors the immunity of interstate commerce,
and expressly forbidden the shipment or transportation into
a state of liquors intended to be received or possessed there
in violation of the law of such state. In *Clark Distilling Co.*
v. *Western Maryland Ry. Co.*, *supra*, p. 325, the court said:
"The movement of liquor in interstate commerce and the
receipt and possession and right to sell prohibited by the
state law having been in express terms divested by the Webb-
Kenyon Act of the interstate commerce character, it follows
that * * * there is no possible reason for holding that to en-
force the prohibitions of the state law would conflict with
the commerce clause of the Constitution." The Webb-Ken-
yon Act "did not simply forbid the introduction of liquor
into a State for a prohibited use, but took the protection of
interstate commerce away from all receipt and possession of
liquor prohibited by state law."

Thus it seems clear that if the state law forbids the possession of liquor in such amount as defendant had in his suit case and under the conditions narrated, he may not claim immunity because he was moving in interstate transportation. It is a question of the construction of the prohibitory law of West Virginia, and that alone. *Hamm Brewing Co.* v. *Chicago ,R. I. & P. Ry. Co.*, 243 Fed. 143. If defendant has violated its terms, his conviction was lawful; if not, it was unlawful. Even if our statute prohibits the mere possession within the state's borders of such quantity of liquor as defendant had, and that alone, it is a valid prohibition and within the power of the state to enact. *Crane* v. *Campbell,* 245 U. S. 304, 38 Su. Ct. 98, 62 L. Ed. 304.

The indictment supported by a conviction followed by a lawful sentence charged defendant with bringing into this state from Maryland and with having in his possession at one time within this state six quarts of intoxicating liquors, a quantity in excess of that permitted for personal use by sec. 31, ch. 32A, Barnes' Code 1918, the section under which defendant was indicted and convicted, and the section which prescribed the penalty for its violation, beyond which the judgment did not go. To the extent of its materiality and application to the facts involved upon this writ, the provision of the section declares: "It shall be unlawful for any person to bring or carry into the state, during any period of thirty consecutive days, or carry from one place to another within the state, in any manner, whether in his personal baggage, or otherwise, more than one quart of intoxicating liquors for personal use."

Though defendant, a witness in his own behalf upon the trial, denied the personal possession and ownership of the liquor and the suit case containing it, the proof abundantly warranted the finding of the jury as to this fact, and their verdict comprehended the ownership and possession of the liquor and the mode of carrying it. Equally clear and convincing also is the proof of the transportation and carriage by him of the suit case and its contents from Cumberland, a station on the Baltimore & Ohio Railroad in Maryland, to Keyser, a station of the same carrier in West Virginia.

Does the possession of the liquor under the circumstances detailed constitute a violation of the terms of the statute?

The section under which the indictment was found aims primarily to restrict the transportation of liquor into and within the state, not through the state under the circumstances detailed in this case. Its purpose is threefold: (1) To aid and make more effective the enforcement of the provisions of sections 2 and 3, which prohibit the manufacture, sale, keeping, storing, offering or exposing for sale, or soliciting or receiving orders for intoxicating liquors within the state; (2) To aid and make more effective the enforcement of the provisions of section 7, which prohibit any person from keeping or having, for personal use or otherwise, or from using or permitting another to have, keep or use, intoxicating liquors at any restaurant, store, office building, club, place where soft drinks are sold, fruit stand, news stand, etc.; (3) To limit the amount of liquor which any person may obtain for his own bona fide personal use.

The reason for section 31 is clearly apparent. Liquor for the violation of sections 2, 3 and 7 can be obtained only in two ways: From its manufacture within the state; from its importation from without the state or transportation from one part of the state to another. The former is strictly prohibited by law, hence the purpose of section 31 is to restrict the latter. The prohibitions of the section are two: The bringing of liquor into the state from without; its transportation from one point within the state to another point within the state. The former aims to prevent the importation of liquor into the state from points without the state; the latter to prevent the distribution within the state of any liquor that by chance has gotten within the state's borders. One restricts interstate, the other intrastate transportation. We may dismiss the latter, for the offense involved here, if any, comes under the first head, that of interstate transportation.

Keeping in mind the purpose of the enactment of section 31, it seems clear that in the absence of words indicating an intention to apply its terms to the transportation of liquor passing through the state, not used within the state or commingled with the general property thereof, its prohibitions

do not so apply. Its primary purpose is to prevent liquor from being transported into or within the state for possession or use within the state in violation of the law thereof. And the legislature has power to prohibit its transpotation through the state, if at all, only as an incident to the effective enforcement of the provisions relating to its use and possession within the state. *Crane* v. *Campbell,* 245 U. S. 304. But section 31, as we construe it, does not as yet go to that extent.

The case was not developed upon the trial to show clearly whether the liquor was intended to be consumed in this state. Though it appears from the evidence that defendant lived in Terra Alta, West Virginia, and was probably going to Oakland, Maryland, there to leave the train and re-cross the state line to Terra Alta, yet the testimony does not fully disclose such an intention. Nor does it show that defendant drank any of the liquor on the train while within the borders of this state, an act which, had it occurred, might have constituted an importation for personal use within the state. Nor did defendant remove the suit case containing the liquor from the train, thus commingling it with the property of this state. The officer making the arrest, not defendant, removed it.

It is urged that this construction of section 31 will open up an avenue of evasion for bootleggers to ply their trade by automobile under the guise of interstate traffic through the state. But without deciding that question at this time, transportation of liquor through the state by automobile would more nearly constitute a commingling of such liquor with the property of this state than does transportation by train. Hence our conclusion is that, where a person in good faith carries liquor on a train which passes through this state, but does not intend to use or sell, and does not use or sell, the liquor while within its borders, and does not remove it from the train so as to constitute a commingling with the general property of the state, no violation of section 31, ch. 32A, Code, has been committed.

The defendant endeavored but was not permitted to raise this question by an instruction saying in effect that he was

not guilty of violating the laws of this state, if the jury should find from the evidence that he in good faith intended to carry the liquor between stations of the carrier in another state, though in so doing he passed through West Virginia. The benefit of this view of the offense charged against him he was entitled to have presented for the jury's consideration, though not conclusive in his favor, as it would leave open the question of good faith in the transportation of the liquors in interstate shipment, but to conform with the principles announced. For if it should appear that the carriage was intended to end at Terra Alta, the residence and place of employment of the defendant within this state, a fact to be determined by the jury, he would be guilty of violating the statute cited.

We therefore reverse the judgment and remand the case for retrial.                              *Reversed and remanded.*