Statement.

# Wytheville.

## BUFORD CREASY v. COMMONWEALTH.

June 15, 1922.

1. WITNESSES—*Credibility—Question for Jury.*—Where a prosecution for transporting liquor turned upon the question of the credibility of a witness for the Commonwealth, as against that of the accused and his witnesses, a verdict of guilty settled that question as against accused, and the testimony of the witness for the Commonwealth must be accepted as true.

2. INTOXICATING LIQUORS—*Transporting—False Swearing—Sufficiency of Evidence to Support a Verdict of Guilty—Case at Bar.*—In the instant case, a prosecution under the prohibition act for transporting liquor, there was false swearing of and for the accused. A witness testified that he had seen accused carrying something towards the place where the liquor was found concealed in some bushes and coming from the place with nothing in his hands. There was evidence, unexplained, that the father and mother of accused ordered the officers off the premises when they saw them getting near the place at which the liquor had been concealed, and there was other circumstantial evidence indicating that accused was the person who carried the liquor to the place where it was found.

   *Held:* That the evidence was sufficient to support a verdict of guilty.

Error to a judgment of the Circuit Court of Bedford county.

*Affirmed.*

The verdict of the jury found the accused guilty of unlawfully transporting whiskey and fixed his punishment at four months in jail and a fine of two hundred dollars. The judgment under review was entered accordingly.

There is but one assignment of error which involves the single question of whether there was sufficient evidence to support the verdict of the jury.

There was direct testimony for the Commonwealth to the following effect:

Ferguson, a witness for the Commonwealth, testified that he saw the accused, about 8 o'clock on Saturday morning, July 2nd, going along the public road about fifty yards from his father's house, carrying something in a sack or bag which he seemed to be holding by a handle, apparently a can. That the accused, after going along the road a short distance, went, through a pair of drawbars in the fence, into some bushes, about twenty-five yards from the road, in a field belonging to the mother of the accused, on the opposite side of the road from the home of the father and mother of the accused, where the accused lived. That the accused came out of the bushes with nothing in his hands. That as witness passed the Creasy house, the mother of the accused was coming out of her door and came to the mail box. That witness went immediately to Turner's store, a distance of about a half mile, and reported what he had seen to a deputy sheriff, named Nance.

Nance, who was also a witness for the Commonwealth, testified that when he was on his way to the store that morning, he, himself, saw the accused, about 7 o'clock, in the road, on a bank, about fifty yards from where the can was afterwards found, and that "something after 8 o'clock" witness saw the accused coming out of that field where the can was afterwards found. That about 10 o'clock witness saw the accused crossing the road going from the house to the cornfield to work. That about 12:30 o'clock witness and some other officers went and made a search in the bushes, into which Ferguson had told witness he saw the accused carry something in a bag or sack, apparently a can, about 8 o'clock, as aforesaid, and

that witness and those with him found the can exhibited on the trial, which was a square tin can, holding five gallons, with a wire handle on top. That they found broken pieces of bushes, lying on top of the can, one of them a bush freshly broken off. That when found the can was full of whiskey. That they found no sack or bag in the bushes. That they thereupon came to town and got a warrant for the arrest of the accused and went back to serve it about 4:30 or 5 o'clock. That when they got close to the place where the can was found the father of the accused, a brother of the accused and the accused were seen coming from the corn field in which they had been working, towards the house. That the father came directly up the path towards the house. That the accused and his brother went down a bottom to the line fence next to a neighboring piece of land and then came up towards the place where the can had been found, and when they got within about twenty steps of the place where the can had been found the officers stopped the accused and put him under arrest. Whereupon the accused denied that he knew anything about the can or that it was his. Another witness for the Commonwealth, one of the officers, testified that bushes were over the can when they found it, some dried and two green ones which had not withered. That there was a hedgerow of bushes along the fence, between the road and the place at which the can was found, and that there were several places in the hedge where the bushes had been broken, one of those places being opposite the location of the can.

The father of the accused, a witness for the defence, testified that he had some cattle in the field where the can was found and that as the fence next to his neighbor was not very good he told the accused and

his brother, as they all quit work to go to the house, to walk down the bottom to the line fence and see whether any of the cattle had gotten over on his neighbor's corn. That he knew nothing about the can or about the whiskey being there.

The brother of the accused, also a witness for the defence, gave the same explanation that the father did of the coming of the accused and his brother around the place where the whiskey was, on quitting work, instead of directly home.

The mother of the accused, likewise a witness for the defence, testified that the accused started to work about 8 o'clock on the morning of July 2nd. That she walked with him to the mail box, which was directly in front of the house. That when they got to the mail box, the mail not having come, she walked along the road fifteen or twenty steps with him, and then went back to the mail box. That the accused had nothing whatever in his hands when he left the witness, going down the road, and that he was in her sight from that time until he went through the drawbars to go into the corn field. That is was after she went back to the mail box, that the witness for the Commonwealth, Ferguson, came by.

The accused testified in his own behalf and stated that he started to his work about 8 o'clock on the day in question. That his mother walked with him to the mail box and a few steps beyond. That he was carrying nothing whatever in his hands. That he went down the road until he came to the drawbars and got through over in the field to go to the corn field. That he saw Ferguson, the witness for the Commonwealth, coming down the road and could not imagine why Ferguson claimed that witness had anything in his hand whatever. That if Ferguson was

telling the truth about saying he thought witness had something in his hand, the only thing he could have seen was that when witness got through the drawbars he took off his hat in order to get through. That he knew nothing about the can that was found there, or of any liquor being put there. He also gave the same explanation, which his father and brother gave, of his not coming directly home from the corn field when they quit work that day.

There was also testimony for the Commonwealth, which was not controverted or explained by the accused, or his father, or mother, that when the officers came in the afternoon and were at a point within fifteen steps of the place where the can had been previously found by them, the officers were ordered off the premises by the father and also by the mother of the accused.

*Nelson Sale*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The sole question presented for our decision by the assignments of error is the following:

1. Was there sufficient evidence before the jury to support the verdict?

[1, 2] This question must be answered in the affirmative.

The case turns upon the question of the credibility of Ferguson's testimony, as against that of the accused

and his witnesses. The verdict of the jury settled that question.

Therefore, taking the testimony of Ferguson to be true, we find on comparing it with the testimony of the accused and his mother that certainly both of the latter must have given a false account of the conduct of the accused at the time Ferguson saw him with something in his hand in a sack or bag, which had the appearance of the can of whiskey afterwards found. The testimony of Ferguson as to what he saw is absolutely irreconcilable with that of the accused and his mother. Both cannot be true. In addition to this false swearing of and for the accused, we have the evidence of the fact, unexplained, that the father and mother both ordered the officers off the premises when they saw them getting near the place at which the whiskey had been concealed. Further, there was the circumstantial evidence tending to show that the place of concealment of the liquor was not new, but one which had been used some time, as evidenced by the appearance of the broken bushes covering the can. The nearness of the place to the residence rendered it extremely improbable that it could have been so used for such a length of time as the circumstantial evidence indicated that it had been used, without some member of the family knowing of it and being able to account for such use in some way. This consideration tended greatly to discredit the truth of the testimony not only of the accused and his mother, but also that of the father and brother, when they testified to absolute ignorance of such use. Added to this, as identifying the accused as the person who carried the can of whiskey to the place where it was found, was the newly broken pieces of bushes on top of the can; the place from whence the evidence indicated they came;

and the direct testimony of Ferguson, that he saw the accused go into the bushes, in the locality where the whiskey was found, with what appeared to be such a can as that, in a bag or sack carried by the handle of the can in his hand, and that he saw him come out of those bushes without anything in his hand; and the testimony of Nance that he saw the accused come out of that field "something" after that, and about 10 o'clock saw the accused crossing the road going from the residence to the corn field to work. The accused may well have taken the sack or bag to the residence on the latter occasion. All this, coupled with the consideration that the accused and his mother, at least, if not the father and brother, gave a false account of the conduct of the accused, if the Ferguson testimony is to be believed (which, as the jury believed it, we must believe to have been true), we must hold that there was ample evidence to support the verdict of the jury.

The case will therefore be affirmed.

*Affirmed.*