# CHARLESTON.

## STATE *v.* KNIGHT.

### Submitted May 22, 1923. Decided May 29, 1923.

1. INTOXICATING LIQUORS—*Evidence Held Sufficient to Sustain Conviction of Unlawfully Carrying More Than One Quart.*
   Under an indictment charging that defendant unlawfully carried more than one quart of intoxicating liquor from one place to another within the state, within a period of thirty consecutive days, the uncontroverted evidence of two witnesses showing that defendant was found carrying a jug containing about a gallon of liquor along the highway, and that in order to avoid arrest he ran from the road into the brush nearby and broke the jug on a rock, thereby spilling the contents on the ground, is sufficient to sustain the verdict of guilty as charged in the indictment.

Error to Circuit Court, Pocahontas County.

Joe Knight was convicted of carrying more than one quart

of intoxicating liquor from one place to another within the state, within a period of 30 consecutive days, and he brings error.

*Affirmed.*

*F. R. Hill,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

MEREDITH, JUDGE:

Defendant was tried and convicted under an indictment which charged him with carrying more than one quart of intoxicating liquor from one place to another within the State, within a period of thirty days, contrary to section 31, chapter 32-A, Barnes' Code, 1918. He was sentenced to two months' imprisonment in the county jail, and to pay a fine of $100.00, which judgment he seeks to have reversed by this court.

Defendant offered no evidence at the trial, and files no brief here. He relies solely and wholly upon the alleged insufficiency of the state's evidence, upon which he was convicted. This evidence consisted of the testimony of two witnesses, L. S. Cochran, a constable of the town of Cass, and E. W. Cochran, his son. They testified, in substance, to the following facts and circumstances:

On a certain evening in July, 1921, about twilight, the witnesses were informed that a "car-load of liquor" was on its way into their community; this liquor they determined to intercept. To do so, they procured two automobiles, and traveled up the road leading from Cass to Greenbank to a point known as Bar Ford. There they saw the car which they suspected. It had stopped, but it moved on when the Cochrans came upon the scene. The latter, having driven their cars a short distance beyond the spot where the suspected automobile had stopped, turned around and started back toward Cass. By this maneuver they came upon the defendant and three companions walking along the road in the same direction. Defendant carried a gallon jug under his arm. The elder Cochran was in front, he therefore ran by the

defendant and those with him, and young Cochran came up behind them. A steep bank ascended from one side of the road at that point, and the highway being blocked in both directions, defendant and his companions left the road and ran down in the brush on the lower side. The Cochrans followed in quick pursuit, and just as young Cochran grasped defendant's arm, the latter succeeded in smashing the jug which he carried, upon a rock which lay upon the ground. The contents splashed upon the feet of defendant and of the witness and upon the leaves and foliage nearby. The fluid was clear in color, it had the odor of moonshine liquor, and was identified as such by the witnesses. From the splash it made, and its appearance on the leaves, the Cochrans concluded that there was about a gallon of it.

Such is the evidence. Counsel for the State say that two issues are raised: (1) was the defendant carrying liquor from one place to another within the meaning of the statute? and, (2) was the quantity sufficiently proven to sustain the indictment?

If such issues are raised, we think they may be briefly disposed of. We attach little technical significance to the expression "carry from one place to another within the state." Having been apprehended in the act of walking along the road with the jug containing the liquor under his arm, and then attempting to evade arrest by escaping through the underbrush at the side of the road, defendant undoubtedly carried the liquor from one place to another within the state, as contemplated by the act. JUDGE LYNCH, in *State* v. *Frazee,* 83 W. Va. 99, 97 S. E. 604, said that the section of the act here involved contained two prohibitions: (1) the bringing of liquor into the state from points without the state, and, (2) the distribution within the state of any liquor that by chance has gotten within the state's borders. Certainly, the statute contemplates no particular means of locomotion; nor does the phrase "from one place to another" import any particular distance or character of travel. These conclusions were substantially the holding of the Supreme Court of Virginia in *Creasy* v. *Commonwealth,* 133 Va. 658, 112 S. E. 615.

There the evidence showed that defendant had carried a sack of liquor along the road and secreted it in the weeds. Under an indictment charging him with transporting whiskey, defendant's conviction was affirmed. This proposition merits no further comment.

The question of the proof of the quantity of the liquor in defendant's jug is the same defense as was raised in the case of *State* v. *Hussion,* 91 W. Va. 146, 112 S. E. 309. There as here, the containers of the liquor were broken upon the ground before the amount of their contents could be ascertained by the arresting officers. We decided, however, that while there was no direct evidence as to what quantity of liquor was in the three half-gallon jars, the jury was warranted in inferring that more than one quart was contained therein. We so decide here, in regard to the defendant's gallon jug.

We are not informed that there was any issue raised as to the character of the fluid defendant carried. Such a defense could avail nothing after the verdict.

Finding no error, we affirm the judgment.

*Affirmed.*